470 N.W.2d 170 (1991)
238 Neb. 233
NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, Appellee,
v.
Ervin HANSEN, Appellant.
No. 89-387.
Supreme Court of Nebraska.
May 31, 1991.
*171 J. Murry Shaeffer, Lincoln, for appellant.
Robert M. Spire, Atty. Gen., Charles E. Lowe, and George D. Green, Lincoln, for appellee.
HASTINGS, C.J., and BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.
WHITE, Justice.
Ervin Hansen, the defendant, appeals from a district court decision which reversed a finding by the State Personnel Board (board). The end result was termination of Hansen's employment at the Nebraska State Penitentiary, a facility operated by the Department of Correctional Services (DCS), the plaintiff-appellee.
Hansen had worked at the penitentiary as a correctional officer for 10 years when, in the early morning hours of November 15, 1987, while on duty as a hospital officer, he was observed by a sergeant who believed that Hansen was asleep at his post. Hansen met with the sergeant at the end of Hansen's shift and reportedly admitted that he had "nodded off," but suggested that it was a result of pain medication he was taking for an arthritic knee. On November 17, Hansen was presented with a written statement of charges, alleging that he had violated 273 Neb.Admin.Code, ch. 13, § 001.03 (1987), which provides that disciplinary action may be taken for an offense involving "[i]nefficiency, incompetence or negligence in the performance of duties."
A meeting was held in the warden's office on November 23, at which Hansen's union representative delivered a written document containing admissions that Hansen was sitting at his post with his head down and that he had nodded off for a few seconds because of the medication. The warden then recommended to the DCS director that Hansen be terminated, with 2 weeks' pay in lieu of notice. The DCS director approved the termination on December 16.
Hansen appealed the termination to the board, which held a hearing on February 18, 1988, to determine the stipulated issues of whether or not the DCS failed to consider mitigating circumstances and whether or not the discipline imposed was progressive discipline. Hansen requested reduction of the dismissal to a 2-day suspension and restoration of his job with backpay.
The board found that Hansen was asleep at his post as alleged by the DCS, a serious violation of agency policy, but that the offense was not commensurate with the discipline imposed when the mitigating factors were considered. The mitigating factors included Hansen's physical condition, his 10-year record of good service, and the fact that the offense did not create a great security risk in the area where it occurred. Finding that progressive discipline should have been imposed, the board ordered that Hansen be reinstated effective April 21, 1988, without backpay, and that he be placed on disciplinary probation for 1 year.
The DCS appealed to the Lancaster County District Court, which reviewed the board's decision on the record of the agency. See Neb.Rev.Stat. § 84-917(5) (Reissue 1987). The trial court reversed the board and found that Hansen should be terminated from his employment. The trial court stated:
It is an unconstitutional usurpation of power by the Personnel Board for them to substitute their judgment for that of the director by means of mitigating factors or otherwise. The Personnel Board exceeds their constitutional authority and their scope of review under the Nebraska State Personnel Rules, Title 273 NAC Chapter 14.008.030 when they seek to reinstate an employee who has been terminated by an agency head.
Hansen's motion for new trial was overruled, and this appeal followed.
Because this petition on appeal was filed on May 20, 1988, we are governed by the case law and statutes in effect at that time. Under Neb.Rev.Stat. § 81-1319 *172 (Reissue 1987), an appeal from a decision of the board is governed by the Administrative Procedure Act, Neb.Rev.Stat. §§ 84-901 et seq. (Reissue 1987), which provides that judicial review in the district court may result in a reversal or modification of the decision
if the substantial rights of the petitioner may have been prejudiced because the agency decision is:
(a) In violation of constitutional provisions;
(b) In excess of the statutory authority or jurisdiction of the agency;
(c) Made upon unlawful procedure;
(d) Affected by other error of law;
(e) Unsupported by competent, material, and substantial evidence in view of the entire record as made on review; or
(f) Arbitrary or capricious.
§ 84-917(6). An appeal to this court, however, "shall be heard de novo on the record." § 84-918.
We held in 1985 that the standard of review for the Supreme Court, found in § 84-918, prescribes a review of an agency's decision de novo on the record, without the limitations imposed on the district court under § 84-917(6)(e) and (f). Haeffner v. State, 220 Neb. 560, 371 N.W.2d 658 (1985). Since that time, we have noted on several occasions that this statutory scheme was illogical.
In Haeffner v. State, 220 Neb. 560, 371 N.W.2d 658 (1985), we concluded that regardless of the incongruity of a true de novo review of a district court review for error only, we had no choice save to follow the legislative mandate. Whether this review in fact constitutes this court as a super-agency as to the administrative decisions of the agencies subject to § 84-918 is beside the point. We therefore proceed to review the matter de novo, reaching a decision independent of all dispositions that have gone before.
Department of Health v. Columbia West Corp., 227 Neb. 836, 838, 420 N.W.2d 314, 316 (1988). See, also, In re Application A-15738, 226 Neb. 146, 151, 410 N.W.2d 101, 105 (1987) ("[a]lthough perhaps recognizing the absence of logic in requiring this court to review de novo a judgment of the district court which never did have an opportunity to make de novo findings, see concurrences of Shanahan, J., and Boslaugh, J., we nevertheless felt compelled to follow the unambiguous language prescribed by the Legislature"); R.D.B., Inc. v. Nebraska Liquor Control Comm., 229 Neb. 178, 183, 425 N.W.2d 884, 887 (1988) ("regardless of the incongruity of a true de novo review of a district court decision wherein the review was for error only, the legislative mandate of the Administrative Procedure Act must be acknowledged").
Our difficulty with the statute has been eased by its amendment, which now governs petitions filed on or after July 1, 1989. The amendment provides that review in the district court is "de novo on the record of the agency." § 84-917(5)(a) (Cum.Supp. 1990). The review in this court is "for errors appearing on the record." § 84-918(3) (Cum.Supp.1990). Because this petition was filed in 1988, we must review it de novo on the record of the agency.
The record includes a statement of charges and the report of Sgt. Bob McPherson, who stated that he found Hansen asleep at his post. McPherson testified that he had been in the hospital to assist a nurse in administering oxygen, and when he returned about 30 minutes later, he found Hansen with his back to McPherson. "So I walked around in front of him; he was sitting in the chair with his eyes shut, and I watched him for a couple of seconds, and I walked over and shook him on the shoulder and when I did that he jumped up." McPherson said he observed Hansen for at least 5 seconds and "it was obvious to me he was asleep."
Hansen's duties in the hospital included "making sure all the inmates are doing okay in their cells," McPherson said. Hansen was to make a fire watch every half hour, be alert for suicide attempts, and assist the nurse if she needed to enter a cell. Hansen had a radio and keys at the time of the incident.
McPherson testified that when Hansen came to McPherson's office at the end of Hansen's shift, McPherson said, "I caught *173 you sleeping, didn't I Erv?" and Hansen responded, "Yeah, but I just dozed off for a few minutes."
At the hearing before the board, Hansen testified that he was sitting at his desk rubbing his knee when he heard McPherson coming. Hansen stated that McPherson "come around the corner and he took his hand just as hard as he could and he pushed me right into the desk and hit my knee on thatmy sore knee on the desk." When Hansen went to McPherson's office at the end of his shift, Hansen said, he denied sleeping but replied that he was rubbing his knee.
Hansen claimed that the document prepared by the union representative, which indicated that it was Hansen's contention that he "nodded off" for a few seconds, did not contain Hansen's words, but the words of the union representative. Hansen again denied sleeping and stated that McPherson was lying.
Frank Hopkins, deputy warden at the penitentiary at the time of the board hearing, testified that it is the policy of the penitentiary to terminate employees found sleeping on duty because all employees at the penitentiary are responsible for security.
In the event a person is sleeping they [sic] cannot be responsible for security, as it requires supervision of areas and/or inmates in events that may take place, and it is considered to be a violation of gross negligence with the potential for significant and severe consequences, and one that is not felt that is possible to be tolerated.
Hopkins stated that in determining that Hansen should be terminated, he took into account Hansen's 10-year record at the penitentiary, including his performance evaluations, "which were average to slightly above average," and the seriousness of the infraction.
The DCS personnel administrator, Gary Burger, testified that discharge is the typical discipline for penitentiary correctional officers found sleeping on the job, although that may not be the case at all the DCS institutions.
While there is a conflict between what Hansen testified to at the hearing and what he is alleged to have admitted to the sergeant on the day of the incident, we "will consider and may give weight to the fact that the agency or hearing officer observed the witnesses and accepted one version of the facts rather than another." Monie v. State Personnel Board, 229 Neb. 27, 30, 424 N.W.2d 874, 877 (1988). We are required to make "independent findings of fact without reference to those made by the agency whose action is being reviewed... and reach our decision independent of all dispositions that have gone before." Monie, supra.
As we noted in a case which involved the termination of an employee at another DCS facility, "[t]he appropriate discipline was a matter within the discretion of the director." Kemper v. State, 230 Neb. 740, 743, 433 N.W.2d 497, 499 (1988).
Under the administrative regulations which govern state personnel, "an employee's conduct which compromises the security of a departmental program or constitutes an offense of `serious magnitude' renders the progressive discipline policy inapplicable." Percival v. Department of Correctional Servs., 233 Neb. 508, 511, 446 N.W.2d 211, 213 (1989). "Although progressive discipline of a correctional facility's employee is authorized under both the state rule and departmental regulation, whether progressive discipline should be imposed and implemented is discretionary with the director of the department." Percival, supra at 512, 446 N.W.2d at 213.
In order to reverse the agency's decision, we must find that its actions were arbitrary or capricious, "taken in disregard of facts or circumstances and without some basis which would lead a reasonable person to the same conclusion." Id. It is not unreasonable to expect that security guards at a maximum security prison will remain awake and alert during their tour of duty. Hansen asserted that he missed none of his required fire checks, and he complains that the department's concern about a fire or suicide is based solely on *174 speculation and conjecture. As we stated in Percival, "[A]ctual harm is not required to impose discipline; an employee's violation of a departmental rule, thereby compromising the security or integrity of [the facility], is sufficient for disciplinary action." Percival, supra at 513, 446 N.W.2d at 214.
The district court's judgment reversing the decision of the State Personnel board is therefore affirmed.
AFFIRMED.