JAMES A. STEJSKAL, APPELLEE, V.
DEPARTMENT OF ADMINISTRATIVE SERVICES,
STATE OF NEBRASKA, APPELLANT.
665 N.W.2d 576

Filed July 18, 2003.   No. S-01-797.

Don Stenberg, Attorney General, Kyle C. Dahl, and Vicki L. Boone-Lawson for appellant.

Anthony C. Coe, of Polsky, Cope, Shiffermiller, Coe & Monzon, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

James A. Stejskal was an employee of the Department of Administrative Services (DAS) from 1987 until his employment was terminated in January 1999. Stejskal followed the employee grievance procedure of the State of Nebraska Classified System Personnel Rules & Regulations, appealing first to the agency head, who denied his grievance. Stejskal then appealed to the Nebraska State Personnel Board (the Board). The Board appointed a hearing officer who conducted a hearing and then recommended overturning the agency head's decision to deny Stejskal's grievance. Nevertheless, the Board voted, and the denial of the grievance was affirmed. Stejskal then appealed to the district court, which reversed the Board's decision, based both on insufficient evidence and on the unfairness of the proceedings. DAS now appeals the decision of the district court.

## FACTUAL BACKGROUND

Stejskal was employed as an accountant by DAS from August 1987 until his termination of employment on January 21, 1999. LaVerne Halstrom was his immediate supervisor. The hearing officer and district court found that the work atmosphere in Stejskal's department at DAS was fast-paced and stressful and that raised voices were not uncommon.

The record shows that Stejskal was first warned of unprofessional conduct in a November 1994 memorandum from Halstrom. Stejskal and Halstrom were discussing problems they both were having with a supplier. According to Halstrom, Stejskal took an "unprofessional and negative position" and "demonstrated an emotionally negative reaction" to the extra work caused by the supplier's shortcomings. Halstrom acknowledged that Stejskal completed the required tasks as requested.

The next incident occurred in October 1996. Stejskal was placed on 6 months' probation for three separate instances. First, he told a coworker in an inappropriate tone of voice to " '[g]o back to your desk and quit your bitching to me.' " Second, he reacted defensively and in an inappropriate tone to Halstrom's question regarding the adequacy of Stejskal's performance on a particular task. Third, when questioned by Halstrom why Stejskal

placed a stack of papers on the wrong desk after a coworker indicated the correct desk, Stejskal stated his reasons in "a negative way." Stejskal successfully completed the 6 months' probation, apparently without incident.

Stejskal was again placed on 6 months' probation in 1997 for another incident between Halstrom and him. On September 8, Halstrom entered Stejskal's work area to give him some instructions. Stejskal testified that he felt very ill that day, later asked to go home sick, and visited a medical clinic in Lincoln for some relief. When Halstrom appeared, Stejskal kept his back to Halstrom, took issue with something Halstrom said, stood up, ignored Halstrom's question, and walked to the men's bathroom while Halstrom asked Stejskal three times to come to his office. When Stejskal returned from the bathroom, he complied with Halstrom's request and they had a 20-minute meeting in his office. In a subsequent meeting called to discuss Halstrom's allegations of Stejskal's conduct, Stejskal presented evidence that he had been ill and had been prescribed some medication. Halstrom dismissed this as unrelated to the offense. Stejskal successfully completed this 6 months' probation without incident.

The final set of events resulting in disciplinary action—this time termination—occurred on January 4, 1999. Stejskal had just returned from vacation to find a stack of invoices on his desk. Stejskal testified that these invoices were not to be left idle on a desk, that they were "priority," and that they should have been processed in his absence. Stejskal feared he was being set up for termination. Halstrom approached Stejskal at 8 a.m. on his first day back with Stejskal's pay stub to speak with him about work issues. Stejskal did not initially communicate with Halstrom. Stejskal then asked repeatedly if he was being fired and appeared to Halstrom to be upset. At a meeting discussing this incident attended by another administrator, Halstrom gave Stejskal instructions to communicate directly with him and to do so in a professional manner. After the other administrator left the meeting, Halstrom told Stejskal to give him hourly updates on the progress with his current task. Stejskal failed to update Halstrom for several hours following this directive, but it is not disputed that Stejskal performed his job functions adequately.

After a meeting informing Stejskal of his alleged violations, Halstrom terminated Stejskal's employment.

## PROCEDURAL BACKGROUND

After his dismissal, Stejskal filed a grievance with the agency head, William Wood, who then denied the grievance. Stejskal appealed to the Board. The Board designated a hearing officer to conduct the hearing and recommend a decision to the Board. The hearing officer held a hearing, made findings, and recommended that the agency head's denial of Stejskal's grievance be overturned. The Board reviewed the evidence, including testimony from Wood as a witness against Stejskal. Upon voting, the Board came to a 2-to-2 impasse. The administrative procedures dictate that in the event of a tie, the decision of the agency head prevails. See 273 Neb. Admin. Code, ch. 14, § 009.03C (1998). Wood's denial of Stejskal's grievance therefore prevailed.

Stejskal appealed to the district court. After adopting the hearing officer's findings of fact, the court found insufficient evidence to establish just cause to discipline Stejskal. The court also found that the type of discipline—dismissal—was not justified by the evidence of Stejskal's actions. This finding came despite the court's conclusion that consideration of previous, time-barred offenses was proper for the limited role of determining the severity of discipline to impose. The court also found that it was "unfair" to Stejskal for Wood's decision to be the tie-breaker on the Board when Wood himself testified against Stejskal before the Board. Upon these findings, the court directed the Board to adopt the hearing officer's recommendations. DAS appeals the district court's judgment.

## ASSIGNMENTS OF ERROR

DAS assigns, restated, that the district court erred by (1) finding insufficient evidence to establish just cause to terminate Stejskal's employment and (2) determining that Wood's dual role as witness and tie-breaker was unfair.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for

errors appearing on the record. *Hauser v. Nebraska Police Stds. Adv. Council*, 264 Neb. 605, 650 N.W.2d 760 (2002).

■ When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. *Id.*

■ Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Kubicek v. City of Lincoln*, 265 Neb. 521, 658 N.W.2d 291 (2003).

■ An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *American Bus. Info. v. Egr*, 264 Neb. 574, 650 N.W.2d 251 (2002).

## ANALYSIS

The Administrative Procedure Act entitles any person aggrieved by an agency's final decision to a judicial review of that decision. The district court reviews the agency's decision de novo on the record of the agency, Neb. Rev. Stat. § 84-917 (5)(a) (Reissue 1999), and if appealed, the court's decision is reviewed by the appellate court for errors appearing on the record. Neb. Rev. Stat. § 84-918(3) (Reissue 1999). We therefore review the district court's decision for errors appearing on the record, while cognizant that the court's review of the agency's decision was de novo.

DAS first alleges that the district court erred by finding insufficient evidence to establish just cause to terminate Stejskal's employment. It specifically argued that the court applied the incorrect standard for a finding of just cause. We must decide whether the court's decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.

■ After its de novo review of the record, the court adopted the hearing officer's findings. The district court in its de novo review of agency determinations is not required to give deference to the findings of fact by the agency hearing officer. *Slack Nsg. Home v. Department of Soc. Servs.*, 247 Neb. 452, 528 N.W.2d

285 (1995). However, it may consider the fact that the hearing officer, sitting as the trier of fact, saw and heard the witnesses and observed their demeanor while testifying and may give weight to the hearing officer's judgment as to credibility. See *Crete Ed. Assn. v. Saline Cty. Sch. Dist. No. 76-0002*, 265 Neb. 8, 654 N.W.2d 166 (2002). Upon review of the record, we determine that the hearing officer's findings, adopted by the court, are supported by competent evidence and conform to the law.

Upon these findings, the district court concluded that the evidence was insufficient to establish the "just cause" which DAS must have prior to disciplining an employee. The court also determined that Stejskal's conduct on the record did not justify the particular measure of termination of employment.

While we have not defined "just cause" in this context, we have said that "good cause" for dismissal is that which a reasonable employer, acting in good faith, would regard as good and sufficient reason for terminating the services of an employee, as distinguished from an arbitrary whim or caprice. *Koster v. P & P Enters.*, 248 Neb. 759, 539 N.W.2d 274 (1995); *Brockley v. Lozier Corp.*, 241 Neb. 449, 488 N.W.2d 556 (1992); *Stiles v. Skylark Meats, Inc.*, 231 Neb. 863, 438 N.W.2d 494 (1989). The two concepts in this context are interchangeable. Therefore, we apply the above standard to the findings regarding just cause in the instant case.

Before considering whether just cause existed, the district court considered which acts could form the basis of that just cause. The court found that the State's labor contract does not permit acts occurring over 1 year earlier to form the basis for initiating discipline. This finding is not erroneous. Therefore, Stejskal's behavior on January 4, 1999, formed the only basis for initiating disciplinary action, since all other incidents took place over 1 year before that action was initiated. The court then concluded that the competent evidence presented of Stejskal's behavior that day was insufficient to show just cause for formal discipline.

According to Halstrom's January 1999 memorandum to Stejskal, he states that Stejskal's acts allegedly violated the following sections of the DAS handbook:

> (10) Failure to maintain a satisfactory working relationship with the public or other employees;

(14) Insubordinate acts or language which seriously hamper the agency's ability to control, manage or function; and

(15) Acts or conduct on the job which adversely affects the employee's performance and/or the employing agency's performance or function.

The evidence of Stejskal's wrongful acts of January 4, 1999, consisted of the testimony of Stejskal's supervisor, Halstrom, with whom Stejskal had a personality conflict. That evidence reveals that Stejskal momentarily refused to communicate with Halstrom, appeared upset, asked if he were being fired, and failed to follow Halstrom's subsequent directive to update him each hour. The directive appeared to the hearing officer to be unreasonable in context of the rush to process invoices already backlogged. The only working relationship shown by the evidence to have been affected was that between Stejskal and Halstrom. The evidence, however, does not lead to a conclusion (1) that any insubordination allegedly directed at Halstrom on January 4 "seriously hampered" DAS control or (2) that Stejskal's or DAS' performance was hindered by Stejskal's acts that day.

Upon this evidence, the court determined that no just cause was established by DAS. The conclusion that a reasonable employer, acting in good faith, would not regard Stejskal's January 4, 1999, behavior as good and sufficient reason for formal discipline is a conclusion that conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. DAS' first assignment of error is without merit.

Having determined the dispositive issue, we need not consider DAS' second assignment of error.

## CONCLUSION

The district court's judgment that the evidence was insufficient to show just cause to discipline Stejskal conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. Accordingly, we affirm.

AFFIRMED.