752 N.W.2d 163 (2008)
16 Neb. App. 777
NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, appellee,
v.
Eric WILLIAMS, appellant.
No. A-07-677.
Court of Appeals of Nebraska.
June 10, 2008.
*164 Eric B. Brown, Ellen A. Deaver, of Atwood, Holsten & Brown, P.C, L.L.O., Lincoln, for appellant.
Jon Bruning, Attorney General, and Vicki L. Adams, Lincoln, for appellee.
SIEVERS, CARLSON, and MOORE, Judges.
MOORE, Judge.

INTRODUCTION
Eric Williams appeals the judgment of the district court for Lancaster County, reversing the decision of the Nebraska State Personnel Board (Board) and upholding the decision of the Nebraska Department of Health and Human Services (DHHS) to terminate the employment of Williams. Williams challenges the district court's findings regarding just cause to terminate Williams' employment and the failure to use progressive discipline. Finding no errors appearing on the record, we affirm the decision of the district court.
Pursuant to the authority granted to this court under Neb. Ct. R. of Prac. 11B(1) (rev.2006), this case was ordered submitted without oral argument.

BACKGROUND
Williams was employed with DHHS as a psychiatric technician in the adolescent unit at the Lincoln Regional Center (LRC). Williams had been employed in that capacity for approximately 10 months before the incident at issue, and his performance evaluations had been positive, with no prior disciplinary actions. Williams' duties consisted of, among other things, checking the patients on a regular basis. On December 6, 2004, Williams, along with coworker Ian Kerkemeyer, was working in the boys' ward on the 3 to 11 p.m. shift. At the beginning of their shifts, Kerkemeyer and Williams were informed that three patients, including S.B. and D.P., may have been planning to attempt to overpower staff and take facility keys in order to escape. Consequently, these patients were placed on "run precaution" *165 status, meaning they were considered to be a risk of escape. LRC policy requires that "run precaution" patients be checked at 10-minute intervals, as opposed to the regular 30-minute intervals.
At approximately 8:15 p.m. on December 6, 2004, Kerkemeyer left the LRC campus to take his 45-minute break. Upon his return, Kerkemeyer was called to assist on the girls' ward due to an uncontrollable patient, returned to the boys' ward at approximately 9:50 p.m., and was again called away to attend to other business. Williams claims that while Kerkemeyer was gone, Williams completed the room checks between 8 and 10:10 p.m., but he was unable to record the checks because Kerkemeyer took the checklist. The record shows that from approximately 10:10 until 11 p.m., Williams was involved in a conversation with one of the nurses and failed to check any of the rooms during that time. At 11 p.m., Williams began checking the patients' rooms. Williams first checked on S.B. and found him present in his room. As Williams checked the other rooms, S.B. left his room and asked Williams' permission to use the bathroom. Williams walked with S.B. to the bathroom, unlocked the door, and then resumed checking the other rooms. At approximately 11:05 p.m., Kerkemeyer returned to the boys' ward with another employee scheduled for the next shift. Kerkemeyer and the other employee began performing the room checks for the shift change and learned that S.B. was not in his room. A short time later, S.B. was located under a table in D.P.'s room.
Williams and Kerkemeyer were placed on investigatory suspension with pay. On February 7, 2005, DHHS terminated Williams' employment. Williams filed a grievance with the agency director and the Department of Administrative Services employee relations administrator. Both of Williams' grievances were denied. Williams appealed to the Board. Following a hearing, the Board concluded that Williams should be reinstated. DHHS appealed this decision to the district court. The district court reversed the Board's decision, concluding that DHHS did have good cause to terminate Williams' employment. The district court also found that the governing labor agreement did not require imposition of a sanction less than termination. Williams appeals.

ASSIGNMENTS OF ERROR
Williams argues that (1) the district court's finding that just cause existed to support Williams' termination is not supported by competent evidence in the record, does not conform to the law, and is arbitrary and unreasonable; (2) the district court's finding of fact that Williams did not complete the required room checks from 8:15 until 10 p.m. is not supported by the record and is erroneous; and (3) the district court erred as a matter of law in holding that DHHS need not employ progressive discipline under the governing labor contract.

STANDARD OF REVIEW
[1, 2] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. Holmes v. State, 275 Neb. 211, 745 N.W.2d 578 (2008). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Holmes v. State, supra.

*166 ANALYSIS

Was There Just Cause to Discipline Williams?
[3] Williams is a member of the Nebraska Association of Public Employees Local 61 of the American Federation of State, County and Municipal Employees (NAPE). His termination of employment is governed by section 10.1 of the labor agreement between NAPE and the State, which provides in pertinent part: "The Employer shall not discipline an employee without just cause, recognizing and employing progressive discipline. When imposing progressive discipline, the nature and severity of the infraction shall be considered along with the history of discipline and performance contained in the employee's personnel file." Williams argues that there was no just cause to discipline him.
[4] "Just cause" for employee discipline is that which a reasonable employer, acting in good faith, would regard as good and sufficient reason for formally disciplining an employee, as distinguished from an arbitrary whim or caprice. Stejskal v. Department of Admin. Servs., 266 Neb. 346, 665 N.W.2d 576 (2003). The Supreme Court has applied the same standard to findings regarding "good cause" for dismissal. Id. The district court in this case found that for nearly an hour, Williams failed to carry out an important aspect of his job. This finding is clearly supported by the record because the evidence showed that Williams admittedly failed to check the "run precaution" patients every 10 minutes from approximately 10:10 until 11 p.m., as required by LRC policy. The district court found that the foregoing gave DHHS cause to discipline Williams, a finding which conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
Because this aspect of the job related directly to the safety and security of S.B., the other patients on the unit, and the public, the district court also found that good cause existed to terminate Williams' employment. Williams argues that the district court disregarded the fact that "absolutely no harm came to the patients under Williams' care." Brief for appellant at 20. The district court did, in fact, consider the lack of harm, but found that "[t]he nature and severity of the infraction is not measured by the harm that resulted but, rather, the risk associated with it," citing to Nebraska Dept. of Correctional Servs. v. Hansen, 238 Neb. 233, 470 N.W.2d 170 (1991). In Hansen, the termination of employment of a correctional officer who fell asleep while alone on duty at a penitentiary was found not to be arbitrary or capricious. Just as the Department of Correctional Services had a reasonable expectation that a security guard would remain awake while on duty, DHHS had a reasonable expectation in this case that Williams would perform the required room checks at the required intervals. See, also, Percival v. Department of Correctional Servs., 233 Neb. 508, 446 N.W.2d 211 (1989) (actual harm not required to impose discipline; employee's violation of department rule, thereby compromising security, is sufficient for disciplinary action).
Williams also argues that his termination of employment was arbitrary because Kerkemeyer, with whom Williams should be compared, did not receive the same discipline. Williams cites to case law involving unlawful employment discrimination, which is not applicable in this case. In any event, there is evidence in the record to show that Kerkemeyer's absence from the ward on the evening in question was for legitimate purposes and that he did not neglect any of his duties.
*167 The district court's finding of good cause for termination conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

Was Finding of Fact That Williams Did Not Complete Room Checks From 8:15 Until 10 p.m. Supported by Record?
[5] In its order, the district court also noted the following:
Not only did Williams fail to do the required checks between 10:10 p.m. and 11:00 p.m., it appears that he failed to do any of the checks between 8:15 p.m. when Kerkemeyer took his dinner break and sometime before 10:00 p.m. when he returned from assisting staff in the girl's Unit.
The record is somewhat unclear regarding whether the rooms were checked between 8:15 and 10 p.m., although Williams testified that he performed the required room checks during this time, but did not complete the required paperwork because Kerkemeyer had the checklist in his possession. Even if the district court's finding regarding what occurred between 8:15 and 10 p.m. was not supported by the evidence, this finding was not material to the district court's ultimate conclusion of good cause for termination, because the district court focused primarily on the lack of room checks between 10 and 11 p.m. This assignment of error is without merit.

Did District Court Err as Matter of Law in Holding That DHHS Need Not Employ Progressive Discipline?
[6] Williams argues that the district court erred in finding that DHHS was not required to "recognize and employ" progressive discipline in this case. The district court did not make this specific finding; rather, the district court found that "section 10.1 of the Labor Agreement does not require the imposition of a sanction less than termination in all cases." We agree. The plain language of section 10.1 requires an employer to recognize and employ progressive discipline. The section goes on to state, "When employing progressive discipline, the nature and severity of the infraction shall be considered along with the history of discipline and performance contained in the employee's personnel file." (Emphasis supplied.) Nowhere in the contract does it state that an employer cannot choose the discipline of termination without first imposing lesser forms of discipline. Rather, section 10.1 recognizes that the nature and severity of the infraction may be such as to require immediate termination of employment.
Williams recognizes that while DHHS could terminate Williams' employment despite his lack of infractions or discipline noted in his file, the "offense would have to be exceptionally egregious." Brief for appellant at 27. The specific language of the contract imposes no such requirements on the employer. As quoted above, the specific language of the labor contract indicates that the level of progressive discipline to be imposed will depend on the nature and severity of the infraction.
There is competent evidence to support the district court's conclusion that the nature and severity of the infraction in this case supported the termination of Williams' employment rather than a lesser sanction.

CONCLUSION
The district court's finding that good cause existed to terminate Williams' employment, rather than impose a lesser sanction, was supported by competent evidence and was not arbitrary, capricious, nor unreasonable.
AFFIRMED.