767 N.W.2d 104 (2009)
278 Neb. 29
John AHMANN and Nebraska Association of Public Employees AFSCME Local 61, appellees,
v.
NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES and the State of Nebraska, appellants.
No. S-08-888.
Supreme Court of Nebraska.
July 2, 2009.
*106 Jon Bruning, Attorney General, and Ryan C. Gilbride for appellants.
Dalton W. Tietjen, of Tietjen, Simon & Boyle, Lincoln, for appellees.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
The Nebraska Department of Correctional Services (DCS) and the State of Nebraska appeal from the district court's order concluding that DCS terminated John Ahmann's employment without just cause, in violation of their labor agreement. DCS had made the decision to terminate Ahmann's employment after a random drug test showed the presence of marijuana in his system. Because of Ahmann's "spotless" employment record, the fact that his drug use was off duty, and his expressed willingness to stop using marijuana, the court determined that termination of employment violated the labor agreement, providing that DCS "shall not discipline an employee without just cause, recognizing and employing progressive discipline."

FACTS
Ahmann was hired by DCS in November 2002 as a receptionist. By August 2004, he was promoted to Secretary II to the deputy warden. In that position, Ahmann was responsible for filing incident reports; filing inmate grievances; maintaining those files; entering data into databases; preparing monthly reports, correspondence, and memoranda; taking meeting minutes; and other general secretarial duties.
Ahmann was a member of the Nebraska Association of Public Employees Local 61 of the American Federation of State, County and Municipal Employees (NAPE). Section 10.1 of the labor agreement between NAPE and the State governs discipline of NAPE employees:
Discipline will be based upon just cause and will in no case be effective until the employee has received written notice of the allegations describing in detail the issue involved, the date the alleged violation took place, [and] the specific section or sections of the contract or work rules involved .... The Employer shall not discipline an employee without just cause, recognizing and employing progressive discipline. When imposing progressive discipline, the nature and severity of the infraction shall be considered along with the history of discipline and performance contained in the employee's personnel file.
Prior to Ahmann's termination of employment, job performance evaluations showed that Ahmann consistently exceeded the performance level expected of him. He never received an evaluation that was less than satisfactory and had never been disciplined or counseled for any misconduct. Ahmann's work performance was described as "complete and accurate." In June 2004, Ahmann was selected as employee of the month because of his dependability, efficiency, positive working relationship with the staff, and willingness to take on extra work whenever the department was short staffed.
In May 2006, Ahmann was subjected to a random urinalysis and tested positive for marijuana. The testing was part of the "Employee Drug Testing Program," policy directive 04-005. The introductory section *107 to the directive states that DCS "has zero tolerance for illicit drug use/abuse" and that to preserve security and protect the personal safety of employees, volunteers, inmates, and the general public, employees were not permitted "to perform their duties or enter departmental facilities or offices while under the influence of alcohol, illegal drugs and/or controlled substances."
The directive states that when test results are positive, DCS has the following courses of action to consider: (1) supplemental training, (2) supervisory counseling, (3) employee assistance program referral or treatment referral to a licensed substance abuse professional, (4) performance improvement plan, or (5) disciplinary action. The Directive explains that DCS will take disciplinary action only "for just cause, while considering any mitigating information." It further states:
However, employees who test positive for drugs may be disciplined for any illegal actions they engage in, including possessing, manufacturing and trafficking in illegal drugs. Employees who test positive for illegal drugs may also be disciplined for failing to fully cooperate with an employer investigation, into the positive drug test, and the circumstances surrounding their drug use.
On June 1, 2006, Ahmann was suspended without pay pending an investigation into the positive urinalysis. That same date, Ahmann submitted a letter to DCS "[i]n an effort to resolve [the] issue as quickly as possible ...." Ahmann admitted that he had, "on occasion," used marijuana. But Ahmann explained that he had never used marijuana either before or during his work hours and had never possessed marijuana on DCS property.
Ahmann stated that he understood marijuana was against the law, but that he had "made a conscious choice to accept the civil penalty involved if [he] were to be ticketed." Possession of less than an ounce of marijuana is, for the first offense, neither a felony nor a misdemeanorit is an infraction, punishable by a $300 fine.[1] Ahmann pointed out that failing to wear a seatbelt was also against the law, similarly punishable by a fine.[2] Ahmann denied using any other drugs.
Ahmann stated he did not believe that his "quite minimal" use of marijuana "had any negative effect on [his] performance, quality, efficiency or accuracy" at his job or that it had ever "risked the safety, security and good working order of the institution." He understood the test results could not "simply be overlooked," but hoped any disciplinary action would be the equivalent of the civil penalty he would have been subject to had he been charged with possession. Ahmann emphasized that he wished to return to work as quickly as possible.
On June 5, 2006, Ahmann was notified he was being charged with violating article 10.2, subsections (a), (d), and (m), of the labor agreement. As relevant, article 10.2 states that appropriate disciplinary action, subject to just cause, may be taken for the following: (a) "[v]iolation of, or failure to comply, with the Labor Contract, State constitution or statute; an executive order; regulations, policies or procedures of the employing agency; or legally promulgated published rules"; (d) "[u]nlawful manufacture, distribution, dispensation, possession *108 or use of a controlled substance or alcoholic beverage in the workplace or reporting for duty under the influence of alcohol and/or unlawful drugs"; or (m) "[a]cts or conduct which adversely affects the employee's performance and/or the employing agency's performance or function."
DCS also attached to the letter a copy of its "Drug Free Work Place Policy." The policy concerns drug abuse and use "at the work place," for which disciplinary action may be imposed. The policy also states that the possession or use of illicit drugs "in the community at large" is "in the direct conflict with the Mission of this Department." Furthermore, referring specifically to the "Code of Ethics and Conduct," the drug-free workplace policy warned employees to be aware of other regulations and policies concerning the possession and use of illicit drugs outside the workplace.
The Code of Ethics and Conduct provides, under the heading of "Personal Accountability," that "[a]n employee is expected to maintain and promote professionalism towards inmates, coworkers and the public" and that such promotion includes "exemplifying the Department's mission." More specifically, the code states that any employee who is arrested or issued a citation for a violation of the law, other than a minor traffic violation, will be subject to investigation. Further, "[a]ny alleged illegal activity on the part of the employee will be considered to have an impact on his or her ability to perform as a correctional employee and may result in immediate suspension from the job pending the outcome of any litigation." Under the more specific category of "Drug Abuse," the Code of Ethics and Conduct specifically prohibits the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance "in [DCS'] work place" and subjects to discipline "[a]ny employee violating this policy."
A predisciplinary meeting between Ahmann and the warden, Diane Sabatka-Rine, took place on June 9, 2006. At the meeting, Ahmann questioned whether he was in fact in violation of the specific rules cited against him. He further explained that he did not think what he did was "wrong." Nevertheless, Ahmann explained that he had decided to stop using marijuana, because that would be in his best interests, and was willing to submit to followup urinalyses. He stated he did not foresee needing any assistance in quitting, pointing out that he had been able to quit in the past. Ahmann explained that he had known when the drug-free workplace policy was issued that he was taking the chance of getting caught with a positive urinalysis. Still, he did not think he actually violated the drug-free workplace policy, as written. Ahmann "apologize[d] for any inconvenience without admitting guilt."
Sabatka-Rine issued a letter terminating Ahmann's employment on June 30, 2006, citing violations of article 10.2(a) and (m) of the NAPE labor agreement. Ahmann filed a grievance with the DCS director, who issued a written decision agreeing with Sabatka-Rine's decision to terminate Ahmann's employment. In accordance with the employee grievance procedure, Ahmann appealed to the State Personnel Board (the Board).
On February 28, 2007, a hearing was held before a hearing officer appointed by the Board. The witnesses testifying at the hearing were Ahmann, Sabatka-Rine, and Keith Ernst, the human resources manager for DCS.
Ahmann again stated that he was never under the influence of marijuana while on the job. He further stated that although he "[o]ccasionally" came into contact with *109 prison inmates, he had never accepted marijuana from an inmate or an inmate's family.
Ahmann admitted that he knew off-duty marijuana use "might" subject him to discipline. Ahmann testified he was aware of the drug-free workplace policy. But Ahmann stated that it was his understanding that even if some form of discipline was appropriate under that policy, he did not expect it to be severe. Ahmann noted that in the policy, "discipline" was last on the list of possible DCS responses to a positive urinalysis. Ahmann thought that given his employment history, he would not be subject to discipline for a first offense. Furthermore, being aware of the progressive discipline policy, Ahmann did not believe that discharge would be appropriate for a single positive urinalysis. Ahmann explained that he knew of instances where employees actually showed up for work under the influence of alcohol and were only put on disciplinary probation.
Ahmann admitted it was his personal view that marijuana was less harmful than alcohol and that it should be legalized. Ahmann reiterated, however, that he was willing to discontinue his use of the drug in the interest of maintaining his employment. Ahmann tried to explain that it had been his intention to be honest and that he "took it like a man." But he felt that the decision to terminate his employment had been made because he was not sufficiently contrite.
Ernst testified that there was no evidence that Ahmann's off-duty marijuana use affected Ahmann's job performance. Ernst instead opined that the off-duty drug use affected DCS' ability to carry out its "mission." Sabatka-Rine elaborated that the mission of DCS related to the safety and security of the facility and that it was hypothetically possible that an employee using marijuana could be buying from someone related to an inmate or who later becomes an inmate.
Ernst and Sabatka-Rine agreed that a positive urinalysis did not automatically result in termination of employment. The disciplinary abstract showed that discipline for a positive urinalysis for marijuana had been imposed on five DCS employees between 2004 and 2006. Three incidents resulted in a disciplinary suspension, and not termination of employment. Termination of employment was imposed for Ahmann and two other employees. Sabatka-Rine explained that one of those two employees discharged had previously tested positive, but had been given a 20-day suspension after he claimed the test was the result of one bad decision at a party. After a second random test was positive for marijuana and it was apparent that the employee had lied, Sabatka-Rine made the decision to discharge. The other employee discharged for a positive urinalysis had stood mute to his charges and had given "no indication that he was going to stop his behavior and comply with [DCS] policy."
Sabatka-Rine testified that Ahmann's wrongdoing stemmed from the positive urinalysis and not any other specific act. She determined that discharge was the proper discipline because Ahmann failed to admit guilt, expressed no regret, and minimized the severity of his infraction, Sabatka-Rine stated further that Ahmann had apparently displayed this behavior over a long period of time and had chosen to continue it despite knowing it was in violation of DCS policy. Sabatka-Rine stated that Ahmann did not leave her with any indication he would comply with DCS policy in the future.
The hearing officer concluded that Ahmann violated article 10.2(a) of the collective bargaining agreement, but that DCS had failed to prove Ahmann violated article *110 10.2(m). The hearing officer explained: "While it is obvious that [DCS] is and should be concerned about its employees using marijuana or other drugs, concern is not sufficient proof that an employee's use of marijuana while off-duty adversely affects the employee's work performance or [DCS'] performance or function." The hearing officer noted that, in fact, Ahmann was a dependable employee with "`above satisfactory'" performance.
The hearing officer recommended that the grievance be sustained in part and that Ahmann be reinstated but suspended for 20 days. The hearing officer concluded that DCS acted arbitrarily when it decided termination of employment was the appropriate discipline, because it did not prove that Ahmann's conduct was so egregious that progressive discipline should be ignored. Furthermore, the hearing officer found it had been established by the record that DCS had, in previous incidents, most frequently opted for a disciplinary suspension when its employees tested positive for marijuana. While DCS claimed Ahmann's attitude raised a question of whether he could be trusted to actually quit using marijuana, the hearing officer explained that this was an insufficient cause for termination of employment, because DCS had the authority to monitor Ahmann with drug testing.
The Board voted to accept the hearing officer's findings of fact and the conclusion that Ahmann had violated article 10.2(a), but not article 10.2(m). But the Board rejected the hearing officer's conclusion that there was no just cause for termination of Ahmann's employment. Instead, the Board concluded that termination of employment was justified in light of the seriousness of the offense and Ahmann's attitude toward the same.
Ahmann appealed under the Administrative Procedure Act[3] to the district court. After a de novo review on the record, the district court reversed the Board's decision to terminate Ahmann's employment. The court concluded that while there was just cause to discipline Ahmann, there was not just cause for immediate termination of his employment. The court noted that there was no evidence Ahmann's use of marijuana "ever affected his performance on the job or in any way jeopardized the safety and security of the institution." The court concluded that "attitudes and beliefs that are contrary to those of DCS do not in and of themselves demonstrate risk of harm such that termination of employment is necessary." The court explained that this was especially true in this case, because Ahmann stated he was willing to cooperate and discontinue using marijuana. The court also considered that Ahmann had an otherwise "spotless" employment record. The court concluded that termination of employment as a sanction exceeded the nature and severity of the infraction for which it was imposed.
The court remanded the case for further proceedings to determine the appropriate sanction short of termination of employment. DCS appeals.

ASSIGNMENTS OF ERROR
DCS asserts that the district court erred (1) in finding no evidence that the positive test for marijuana use posed a risk of harm to the safety and security of the institution and (2) in finding that the imposition of termination of employment as a sanction exceeded the nature and severity of the infraction for which it was imposed.

*111 STANDARD OF REVIEW
[1,2] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[4] When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[5]
[3] An appellate court will not substitute its factual findings for those of the district court where competent evidence supports those findings.[6] "Competent evidence" means evidence that tends to establish the fact in issue.[7]
[4] Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.[8]

ANALYSIS
[5-7] In a district court's de novo review of the decision of an administrative agency, the level of discipline imposed by the agency is subject to the district court's power to affirm, reverse, or modify the decision of the agency or to remand the case for further proceedings.[9] The district court is not required to give any deference to the findings of the agency hearing officer or the department director.[10] In this case, the district court determined that the immediate termination of Ahmann's employment violated the labor agreement. We hold that this decision conforms to the law and was neither arbitrary, capricious, nor unreasonable.
[8] The labor agreement requires that DCS have "just cause" for its discipline of an employee and that it recognize and employ "progressive discipline." "Just cause" for dismissal is that which a reasonable employer, acting in good faith, would regard as good and sufficient reason for terminating the services of an employee, as distinguished from an arbitrary whim or caprice.[11] Progressive discipline is not specifically defined by the agreement, but the common meaning of "progressive" is to develop "gradually," "in stages," or "step by step."[12] Both parties agree that a progressive discipline policy does not require that the employer always impose some measure short of termination of employment for a first offense.[13] However, in accordance with the terms of the labor agreement, before making the decision to terminate employment, DCS must consider "the nature and severity of the infraction *112 ... along with the history of discipline and performance contained in the employee's personnel file."
Considering the nature and severity of the infraction in this case, along with Ahmann's history of discipline and performance, the district court was correct to conclude that a reasonable employer, acting in good faith, would not regard the infraction as good and sufficient reason for immediate termination of Ahmann's employment. Ahmann did knowingly violate article 10.2(a) of the labor agreement, which subjects employees to discipline for violating a state statute. His positive urinalysis was sufficient, under the agreement, to show that Ahmann was in possession of marijuana, an infraction under state law.[14]
But the court was also correct to conclude that Ahmann had not violated the other subsections under which DCS had originally sought discharge. Article 10.2(d) concerned drug use "in the workplace" and was not ultimately cited as a ground for discharge. Article 10.2(m) concerned acts adversely affecting performance or function. It was neither arbitrary, capricious, nor unreasonable for the district court to find that Ahmann's use of marijuana did not affect his job performance or in any way jeopardize the safety and security of DCS.
Clearly, DCS' treatment of other employees who tested positive for marijuana shows that DCS does not consider off-duty drug use to be a per se justification for immediate discharge. In fact, the employee drug testing program specifically contemplates numerous courses of action short of discharge when test results are positive. The district court found that the decision to discharge Ahmann was based in large part on his attitude, and the court did not err in concluding that it was unreasonable for DCS to discharge Ahmann for that reason. Much of Ahmann's "attitude" stemmed from his correct assertion that he was not strictly violating all the provisions cited by DCS against him. Ahmann also failed to admit that what he had done was "wrong." But Ahmann expressed a desire and willingness to comply fully with DCS policy in the future and to cease all use of marijuana. As the district court noted, DCS has the means to monitor whether this actually occurs. To the extent that attitude is a factor in whether there is just cause for immediate discharge, the district court was not wrong to conclude that Ahmann's attitude did not significantly change the fundamental analysis that the nature and severity of Ahmann's infraction, when considered in conjunction with his positive work history, do not warrant ignoring progressive discipline.

CONCLUSION
For the foregoing reasons, we conclude that the district court did not err in remanding Ahmann's case to the Board for further proceedings to determine what sanction, short of discharge, would be appropriate.
AFFIRMED.
WRIGHT, J., participating on briefs.
NOTES
[1] See, Neb.Rev.Stat. §§ 28-416(13)(a) and 29-431 (Reissue 2008); Miller v. Peterson, 208 Neb. 658, 305 N.W.2d 364 (1981), disapproved on other grounds, Jacobson v. Higgins, 243 Neb. 485, 500 N.W.2d 558 (1993).
[2] See Neb.Rev.Stat. §§ 60-6,267 (Cum.Supp. 2008) and 60-6,268 (Reissue 2004).
[3] See Neb.Rev.Stat. §§ 84-901 to 84-920 (Reissue 2008).
[4] Holmes v. State, 275 Neb. 211, 745 N.W.2d 578 (2008); Rainbolt v. State, 250 Neb. 567, 550 N.W.2d 341 (1996).
[5] Id.
[6] Rainbolt v. State, supra note 4.
[7] Hammann v. City of Omaha, 227 Neb. 285, 417 N.W.2d 323 (1987).
[8] Stejskal v. Department of Admin. Servs., 266 Neb. 346, 665 N.W.2d 576 (2003).
[9] Rainbolt v. State, supra note 4. See, also, § 84-917(5).
[10] Trackwell v. Nebraska Dept. of Admin. Servs., 8 Neb.App. 233, 591 N.W.2d 95 (1999).
[11] See Stejskal v. Department of Admin. Servs., supra note 8.
[12] Concise Oxford American Dictionary 707 (2006).
[13] See Nebraska Dept. of Health & Human Servs. v. Williams, 16 Neb.App. 777, 752 N.W.2d 163 (2008).
[14] See § 28-416(13)(a).