IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

Essman v. Nebraska Dept. of Health & Human Servs.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

Raynette Essman, appellant,
v.
Nebraska Department of Health and Human Services, appellee.

Filed November 10, 2014.    No. A-13-840.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and John L. Jelkin for appellee.

Moore, Chief Judge, and Irwin and Pirtle, Judges.

Pirtle, Judge.

## INTRODUCTION

Raynette Essman appeals from an order of the district court for Lancaster County affirming the decision of the Nebraska State Personnel Board (the Board) to terminate her employment with the Nebraska Department of Health and Human Services (the Department). Essman worked at the Beatrice State Developmental Center (BSDC), and her employment was terminated after she failed to timely report an incident of possible abuse. She argues that the Department was not justified in imposing discipline and that termination was an excessive disciplinary sanction. Based on the reasons that follow, we affirm.

## BACKGROUND

BSDC is an intermediate care facility for persons with developmental disabilities. The facility serves approximately 130 individuals with a wide range of disabilities, all residing at BSDC. Residents at BSDC are vulnerable and often unable to recognize or report abuse themselves.

- 1 -

BSDC operates with federal funding from the Center for Medicare/Medicaid Services (CMS). BSDC has experienced penalties in the past from CMS for not taking sufficient corrective action when addressing alleged abuse/neglect, resulting in significant loss of federal funding. Consequently, BSDC has adopted an abuse/neglect policy providing for zero tolerance of client abuse/neglect and zero tolerance of failures to report possible abuse/neglect of BSDC clients.

Under BSDC policy, all incidents either perceived or known to reflect abuse or neglect are to be identified. BSDC staff are required to intervene when observing or suspecting abuse or neglect and to immediately report any observed or suspected abuse/neglect to a shift supervisor, or if the staff member wants to report anonymously, reports can be made to the BSDC switchboard. Staff members are also required to report all suspected incidents of abuse/neglect directly to Adult/Child Protective Services. According to the express terms of BSDC policy, failure to report possible abuse/neglect will result in termination. Reporting requirements apply to all BSDC staff.

Essman began her employment with BSDC on August 10, 2010, as a "Developmental Technician II." In February 2012, Essman was promoted to a "Developmental Technician Shift Supervisor," although she had not yet started this position at the time of the events in question. Both jobs involved providing direct care for individuals living at BSDC and ensuring their continued health and safety. Essman was trained on BSDC's abuse/neglect policy when she was hired and had training annually thereafter. On February 3, 2012, Essman received updated training on BSDC's abuse/neglect policy. As part of that training, Essman was required to take a test over the policy to demonstrate her understanding of the policy. Essman achieved a perfect score on the review test. Essman also testified she understood that under the abuse/neglect policy she had to report any abuse or possible abuse and that a failure to do so would result in termination of employment.

The event that led to Essman's termination occurred while Essman was working the overnight shift on February 20 into February 21, 2012. Around 7 a.m. on February 21, near the end of her shift, a fellow employee, Holly Mick, told Essman that a resident had been abused. Mick told Essman that injuries a resident had suffered about 10 days earlier, previously reported to be the result of self-injurious behavior, were actually caused by two employees abusing the resident. Mick said that the two employees held the resident face down on the floor, one holding his legs and the other repeatedly slamming the resident's face into the carpet. Mick also told Essman that one of the employees had put a different resident in a "headlock" using his legs and had threatened at least one other resident.

Essman left BSDC when her shift ended without reporting the abuse that Mick told her about. While in her car getting ready to go home, she saw one of the shift supervisors, Deb Lantz. Essman testified that she did not report to Lantz what Mick had told her because she decided to "ponder this over." She testified that she was not sure she should believe what Mick had told her and that she thought her coworkers were possibly "trying to set [her] up to see how far they could push [her]" based on a conversation the day before in which Essman indicated she would report possible abuse.

Essman reported for work the next night, working the overnight shift on February 21 into February 22, 2012. Essman worked the full shift without reporting the abuse Mick told her about.

Essman worked again the following night, February 22 into February 23, and during that shift, she told one of the shift supervisors, Suellen Johnson, about the possible abuse. Johnson proceeded to call the "Administrator On Call," pursuant to BSDC reporting requirements.

In the early morning hours of February 23, 2012, Essman completed several incident reports describing what she had been told by Mick and her reasons for not immediately reporting the possible abuse. Essman wrote that she delayed reporting because she was uncertain whether or not the information she received from Mick was true, because she did not see the abuse happen; she was worried she might be threatened if she reported the information; and she wanted to make the report to her own shift supervisor, rather than report it to someone else.

Essman was placed on investigatory suspension due to her failure to timely report the alleged abuse. BSDC's investigations unit, in conjunction with the Nebraska State Patrol, investigated the allegations of abuse as well as Essman's delay in reporting the possible abuse. Following the investigation, on May 10, 2012, the Department terminated Essman's employment at BSDC. Essman challenged her termination using the applicable grievance process. As part of the grievance process, a hearing was held before the Board, and following the hearing, the Board adopted the "Recommended Decision of the Hearing Officer" denying Essman's appeal. The Board found that discipline was justified pursuant to 273 Neb. Admin. Code, ch. 14, § 003 (2006), on two grounds: Essman's violation of BSDC's abuse/neglect policy, and her negligence in the performance of her duties. The Board also found that termination was an appropriate disciplinary sanction.

Essman appealed the Board's decision to the district court for Lancaster County, which affirmed the Board's decision. The district court found that Essman failed to immediately report possible abuse and that such failure was a plain violation of applicable policy. It further found that Essman knew she was required to report possible abuse and had numerous opportunities to do so. The court concluded that Essman's failure to report the alleged abuse justified the imposition of discipline and that termination was an appropriate sanction.

## ASSIGNMENTS OF ERROR

Essman assigns, restated, that the district court erred in (1) finding that she violated policy and, therefore, that the Department was justified in imposing discipline; (2) finding that she was negligent in the performance of her duties; and (3) finding that termination of employment was an appropriate disciplinary sanction.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Ahmann v. Nebraska Dept. of Corr. Servs.*, 278 Neb. 29, 767 N.W.2d 104 (2009). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

An appellate court will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id.* "Competent evidence" means evidence that tends to establish the fact in issue. *Id.*

Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Id.*

ANALYSIS

*Violation of Abuse/Neglect Policy.*

Essman first argues the district court erred in finding that she violated BSDC's abuse/neglect policy by failing to immediately report the possible abuse as told to her by Mick and that therefore, the Department was not justified in imposing discipline.

Under the Nebraska Classified System Personnel Rules & Regulations, specifically 273 Neb. Admin. Code, ch. 14, § 003, disciplinary action may be taken for actions constituting any one of 17 offenses. One of those offenses is for "[v]iolation of, or failure to comply with: . . . policies or procedures of the employing agency . . . ." 273 Neb. Admin. Code, ch. 14, § 003.01 (2006).

BSDC's policy for reporting abuse and neglect states:

It is policy that all incidents perceived or known to reflect abuse or neglect are identified. Actions are taken and/or safeguards are implemented immediately and maintained at least for the course of the investigation for designated significant incidents. All incidents of reported Abuse/Neglect are reported to Adult/Child Protection Services and the ICF Administrator (Administrator)/Administrator on Call (AOC). *Failure to intervene and report possible abuse/neglect per this policy will result in termination.*

(Emphasis supplied.)

The policy also provides that "All suspected or witnessed incidents of abuse/neglect are reported immediately to the Shift Supervisor." "Abuse" is defined under the policy as

knowingly, intentionally, or negligently causing or permitting an individual to be placed in a situation that endangers their life or physical or mental health . . . . Any of the following when directed towards an individual (including peer to peer) is considered Abuse or Neglect and is a Serious Reportable Incident, which is reported to the Shift Supervisor immediately.

Essman argues that she did not violate BSDC's abuse/neglect policy because the investigation revealed that there was no abuse of the resident as alleged and she did not observe abuse or suspect that abuse had actually occurred. Rather, she only suspected that she was being tested to see how far she would take a rumor.

Essman's arguments are without merit. She was told of possible abuse on February 21, 2012, and failed to immediately report it. She did not report it before leaving work at the end of her shift, did not report it during her shift the next night, and finally reported it while working the second night after being told the information. The policy is clear that all abuse or perceived abuse is to be reported immediately. Essman's argument that she did not violate the policy because she suspected that what Mick had told her was not true is irrelevant under the policy. It is not an employee's job or responsibility to investigate an allegation of abuse or to keep the

- 4 -

information to herself while considering its truth. An employee's responsibility is simply to report possible abuse immediately, which Essman failed to do. Further, the fact that the abuse allegations were determined to be unfounded is of no consequence, because the policy requires that all possible abuse/neglect be reported immediately. If the possible abuse turns out not to be true, that does not excuse an employee from failing to immediately report the possible abuse.

Essman testified that she had been trained in regard to the abuse/neglect policy and knew that she had to report witnessed or possible abuse and that failure to do so would result in termination. Essman became aware of possible abuse when Mick told her that a resident was injured by two other employees. Essman failed to immediately report the possible abuse as required by the policy, waiting 40 hours before finally reporting it to a shift supervisor. We conclude that the district court did not err in finding that Essman's failure to report the possible abuse immediately was a violation of BSDC's abuse/neglect policy and that the Department was justified in imposing discipline. Essman's first assignment of error is without merit.

Essman also assigns that the district court erred in finding that Essman was negligent in the performance of her duties, another offense under 273 Neb. Admin. Code, ch. 14, § 003, that allows for disciplinary action. However, although the Board had found that Essman was negligent in the performance of her duties, the district court made no finding in regard to Essman's negligence. Essman acknowledges this in the argument section of her brief. Having found that the imposition of disciplinary action was justified based on a violation of BSDC's abuse/neglect policy, it was not necessary for the district court to discuss the Board's finding that Essman was negligent in the performance of her duties. See *Edwards v. Mount Moriah Missionary Baptist Church*, 21 Neb. App. 896, 845 N.W.2d 595 (2014) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it). Accordingly, because the district court did not reach the issue of whether Essman was negligent in the performance of her duties, there is nothing for us to review and we do not address the merits of this assignment of error.

*Termination as Disciplinary Sanction.*
Essman next argues that even if the evidence supports the conclusion that she violated the policy, the termination of her employment was an excessive disciplinary sanction. Essman argues that the nature and severity of the violation did not dictate the level of discipline imposed. She further argues the Board failed to take into account that she had never been disciplined before and that BSDC had promoted her to a supervisory position.

In part, 273 Neb. Admin. Code, ch. 14, § 001, provides:

The following types of disciplinary issues and levels of disciplinary actions [including dismissal under 273 Neb. Admin. Code, ch. 14, § 001.06 (2006)] are described in a progressive manner. However, the nature and severity of the violation will dictate the level of discipline imposed. More severe levels of disciplinary action may be imposed when a lesser action is deemed inadequate or has not achieved the desired results.

The rule also requires consideration of the type and frequency of previous offenses, the period of time elapsed since a prior offense, and consideration of extenuating circumstances.

Nebraska courts have upheld termination as an appropriate sanction in cases where it is the employee's first infraction and where the violation involves the safety and security of

residents and/or the facility, as in the instant case. For example, in *Nebraska Dept. of Health & Human Servs. v. Hansen*, 238 Neb. 233, 470 N.W.2d 170 (1991), the plaintiff worked for the Department of Correctional Services and his supervisor observed him sleeping at his post. The plaintiff's employment was terminated based on the risk created by his actions, despite his average to above-average performance during his 10 years of employment. The plaintiff argued that the Department of Correctional Services' concern about a fire or suicide while he was sleeping was based solely on speculation and conjecture. The Supreme Court held that actual harm is not required to impose discipline; an employee's violation of a rule which comprises the security and integrity of the facility is sufficient for disciplinary action.

In *Nebraska Dept. of Health & Human Servs. v. Williams*, 16 Neb. App. 777, 752 N.W.2d 163 (2008), the plaintiff worked for the Department and failed to perform precautionary checks on at-risk patients within the required 10-minute intervals for a period of nearly an hour. The plaintiff was terminated from his employment. He had been employed with the Department for 10 months with positive performance evaluations and no formal discipline. Again, although no harm resulted, this court upheld the termination based on the risk of harm to the safety and security of the facility caused by the plaintiff's violation of the Department rule.

Finally, in *Petersen v. Nebraska Dept. of Health & Human Servs.*, 19 Neb. App. 314, 805 N.W.2d 667 (2011), the plaintiff admitted that he had smoked marijuana prior to beginning his shift and was terminated because his offense had the potential to affect his job performance and jeopardize the safety and security of the facility. The plaintiff had worked for the Department for 28 years without receiving formal discipline.

Like each of the employees in the cases above, Essman was required to ensure the safety of the facility's residents. Essman's primary responsibility was to provide direct care for individuals living at BSDC and to ensure their continued health and safety. The evidence shows that the residents are vulnerable and often cannot recognize or report abuse themselves. Despite her responsibility to ensure the safety of the residents and the policy requirement to report any possible abuse, when Essman learned of possible abuse, she failed to immediately report it. During the time she waited to report the possible abuse, she placed the individual residents who were the subject of the possible abuse at risk of harm, as well as all the residents of BSDC. In addition, she placed the entire facility itself at risk of losing funding and potentially having to close. As previously stated, BSDC was penalized in the past for not taking sufficient corrective action when addressing alleged abuse/neglect, resulting in the loss of significant federal funding from CMS. Consequently, in order to ensure continued CMS funding, BSDC adopted the subject policy, providing for zero tolerance in regard to abuse/neglect as well as the reporting of possible abuse/neglect. The abuse/neglect policy specifically states that failure to report possible abuse will result in termination. Essman was trained on the abuse/neglect policy, and she testified that she knew that pursuant to the policy, the consequence for failing to immediately report abuse was termination.

The fact that Essman had not been previously disciplined and was promoted to a supervisory position, as well as other extenuating circumstances cited by Essman, does not outweigh the risk to which she subjected BSDC residents and the facility itself. Given that we are reviewing this matter pursuant to a de novo review, because the issue is a question of law, we

conclude that termination was an appropriate level of discipline and that the district court did not err in so finding.

## CONCLUSION

We conclude that the district court did not err in finding that Essman violated BSDC's abuse/neglect policy and that the Department was justified in imposing discipline under 273 Neb. Admin. Code, ch. 14, § 003. We also conclude that the district court did not err in finding that termination of employment was an appropriate disciplinary sanction. Accordingly, the order of the district court is affirmed.

AFFIRMED.