Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/29/2021 01:08 AM CDT

- 918 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

CITY OF OMAHA, APPELLANT, V. PROFESSIONAL
FIREFIGHTERS ASSOCIATION OF OMAHA,
LOCAL 385, AFL-CIO, APPELLEE.
___ N.W.2d ___

Filed August 6, 2021.    No. S-20-735.

1. **Arbitration and Award: Appeal and Error.** In reviewing a decision
   to vacate, modify, or confirm an arbitration award, an appellate court is
   obligated to reach a conclusion independent of the trial court's ruling as
   to questions of law. However, the trial court's factual findings will not
   be set aside on appeal unless clearly erroneous.
2. **Arbitration and Award: Contracts: Appeal and Error.** Courts do not
   sit to hear claims of factual or legal error by an arbitrator as an appel-
   late court does in reviewing decisions of lower courts. A court may not
   overrule an arbitrator's decision simply because the court believes that
   its own interpretation of the contract, or the facts, would be the bet-
   ter one.
3. **Arbitration and Award: Federal Acts: Contracts.** Arbitration in
   Nebraska is governed by the Federal Arbitration Act if it arises from
   a contract involving interstate commerce; otherwise, it is governed by
   Nebraska's Uniform Arbitration Act.
4. **Arbitration and Award: Federal Acts.** Evident partiality within the
   meaning of 9 U.S.C. § 10 (2018) exists when a reasonable person
   would have to conclude that an arbitrator was partial to one party to
   the arbitration.
5. **Judges: Recusal: Judgments.** Judicial rulings alone almost never con-
   stitute a valid basis for a bias or partiality motion directed to a
   trial judge.
6. **Arbitration and Award: Motions to Vacate.** Serious legal or factual
   error by an arbitrator does not, standing on its own, provide a basis for
   vacating an award.

- 919 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

7. ____: ____. A court may not vacate an arbitration award governed by Nebraska's Uniform Arbitration Act on the ground that the arbitrator manifestly disregarded the law.

8. **Appeal and Error.** Errors assigned but not argued will not be addressed by an appellate court.

9. **Actions: Attorney Fees: Words and Phrases.** A frivolous action is one in which a litigant asserts a legal position wholly without merit; that is, the position is without rational argument based on law and evidence to support the litigant's position. The term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous.

10. **Actions.** Any doubt about whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question.

Appeal from the District Court for Douglas County: Leigh Ann Retelsdorf, Judge. Affirmed in part, and in part reversed.

Heidi A. Guttau and George E. Martin III, of Baird Holm, L.L.P., for appellant.

Michael P. Dowd and John E. Corrigan, of Dowd & Corrigan, L.L.C., for appellee.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

After the City of Omaha (City) sought to discharge Steve LeClair, a firefighter and the president of the Professional Firefighters Association of Omaha, Local 385, AFL-CIO (union), LeClair exercised his contractual right to challenge his discharge in arbitration. The arbitrator found that the City did not have just cause to discharge LeClair and ordered his reinstatement. The City responded by attempting to have the arbitration decision vacated in district court. The district court not only denied the City's motion to vacate and confirmed the arbitration award, it found the City's motion to vacate was frivolous and ordered it to pay the union's attorney fees and

- 920 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

costs. In this appeal filed by the City, we find that while the City's motion to vacate was not frivolous, the district court did not err in refusing to vacate the arbitrator's decision. We therefore reverse the award of attorney fees and costs, but otherwise affirm the decision of the district court.

## BACKGROUND

*November 2018 Incident and
LeClair's Termination.*

On November 9, 2018, LeClair was off duty and socializing at a bar in Omaha, Nebraska. R.J., an African-American patron at the bar, alleged that at some point during that night, LeClair made sexually suggestive comments to her and then later approached her, said the words "white power," and struck her in the back.

After R.J. filed complaints regarding the incident, LeClair was charged with assault and battery and disorderly conduct. He pleaded no contest to the charges and was sentenced to 6 months' probation.

In addition to the criminal charges, the City also pursued an internal investigation. After the conclusion of the internal investigation, the City issued a letter to LeClair in April 2019 informing him that the City was discharging him from employment. LeClair promptly informed the City that he was invoking his right under the collective bargaining agreement between the City and the union (CBA) to challenge his discharge in arbitration.

*Arbitration Hearing.*

The parties agreed to an arbitrator, and a hearing was held before her in August 2019. The arbitration hearing lasted 3 days. Over 20 witnesses testified, and the arbitrator received nearly 100 exhibits. We provide only a brief summary of the evidence presented at the hearing that is relevant to this appeal.

The City presented evidence that R.J. filed a citizen's complaint with the Omaha Fire Department and later made a

- 921 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

police report regarding the November 9, 2018, incident. The City presented evidence regarding the criminal and internal investigations it conducted after receiving R.J.'s complaints. It presented evidence that during the internal investigation, LeClair was instructed in a letter notifying him he was being placed on administrative leave not to discuss the investigation with other employees, and specifically not to engage in "unsolicited communications with OFD Investigator Captain Kim Remus." The City presented evidence that LeClair nonetheless called Kimberly Remus shortly after receiving that instruction and brought up the investigation. Remus testified that when she spoke to LeClair, LeClair informed her that he had been placed on administrative leave and speculated that it was because the fire chief, Daniel Olsen, had seen him talking to Remus in her office a few days before. Remus testified that she informed LeClair that his visit to her office was not the reason and that LeClair then became silent for a moment, said goodbye, and hung up.

Olsen testified that when both investigations concluded, he reviewed the reports generated in the investigation and watched surveillance video of the incident. After reviewing these materials and the CBA, Olsen concluded that LeClair could be discharged under the CBA and that discharge was the appropriate sanction. Olsen explained that in deciding to discharge LeClair, he took into account that LeClair's conduct would harm the reputation of the fire department.

At the arbitration hearing, LeClair attempted to show that the decision to discharge him was influenced by his prior political disputes with the City's mayor, that the City's investigations were unfair, and that the City's choice to discharge him was excessive in light of his prior track record as an employee and the way in which the City had disciplined other firefighters for misconduct. As part of this effort, LeClair elicited testimony from Remus that after she received a voicemail from R.J. about the November 9, 2018, incident, Remus returned the call and instructed R.J. how to file a complaint, which was not

- 922 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

something she usually did. The City's human resources director also acknowledged he called R.J. to see if she was going to file a complaint after one of his initial contacts with her. LeClair also presented evidence that on the same day that police reports regarding R.J.'s complaint were provided to the City's mayor and forwarded to persons within her office and to a member of the city council, the Omaha World-Herald newspaper published an article regarding R.J.'s accusations. Other evidence at the arbitration hearing included an acknowledgment from an investigating police officer that the scope of the investigation was abnormal for an alleged misdemeanor; an email from the City's human resources director to one of the City's prosecutors, asking if the prosecutor had provided LeClair's attorney with the surveillance video of the incident and stating that he was fighting not to give LeClair the video prior to LeClair's being interviewed for the internal affairs investigation; and evidence showing that a pretermination conference was conducted by an individual not employed by the City.

LeClair also presented evidence regarding his history with the fire department. LeClair began working for the fire department in 2002, with some interruptions for military service. The only discipline in LeClair's file was a reprimand for being late for work in 2011. LeClair called a number of witnesses both from within and outside the fire department who generally testified that in their years of working with and knowing LeClair, they had never observed any acts of bigotry or racial discrimination, but that LeClair treated everyone equally. Evidence was also introduced that LeClair sought funding from an international firefighters union to establish a program to increase diversity in the fire department and that he encouraged his nephew, who testified he is "[h]alf black, half white," to join the fire department. LeClair also introduced evidence regarding the discipline the City imposed upon other firefighters for misconduct.

LeClair testified at the arbitration hearing. He denied ever engaging in racial discrimination during his life. Regarding

- 923 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

the November 9, 2018, incident, LeClair denied "hitting on" R.J. or making any sexual advances toward her. He acknowledged that he elbowed R.J. and said "what white power," but he also denied there was any racial animus or violence intended. LeClair testified that earlier in the evening, he had been discussing white nationalist groups with his colleagues. He claimed he was attempting to make a negative statement about those groups, but that R.J. was not a part of his earlier conversations and that his statement was "not the right venue, not the right person, not the right frame of mind," and a mistake he regretted. He also testified that he did not realize the extent of the force he exerted on R.J. when he made contact with her.

*Arbitrator's Decision.*

After the arbitration hearing, the arbitrator issued a written decision. The arbitrator described the issue before her as whether LeClair's employment was terminated for just cause under the CBA. The arbitrator stated that she would analyze just cause through what she described as the "seminal definition" of the phrase set forth in *Enterprise Wire Co.*, 46 Lab. Arb. Rep. (BNA) 359 (1966) (*Enterprise Wire*), a labor arbitration decision. The arbitrator explained that this definition required the consideration of the seven following questions:

1. Was the employer's rule or managerial order reasonably related to the orderly, efficient and safe operation of the business?

2. Did the employer give any warning as to any possible discipline or consequences that could result from that employee's action or behavior?

3. Prior to administering discipline, did the employer conduct an investigation to determine whether the employee did in fact violate or disobey a rule or order?

4. Was this investigation fair and objective?

5. Did this investigation uncover any substantial proof or evidence that the employee was guilty of violating or disobeying a direct order?

- 924 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

6. Did the employer obey all rules, orders and penalties evenhandedly and without discrimination to all employees?

7. Was the degree of discipline reasonably related to either the seriousness of the employee's offense or to the record of past service?

In assessing these questions as they related to the City's termination of LeClair, the arbitrator concluded that the first and second questions favored the City. The arbitrator concluded that LeClair had engaged in conduct for which he could be disciplined under the CBA and, in particular, that LeClair "engaged in conduct [that] was offensive to a citizen of Omaha" and had violated a direct order by contacting Remus after being instructed not to do so. The arbitrator also determined that LeClair should have known that such actions could result in discipline.

In answering the other *Enterprise Wire* questions, however, the arbitrator found several problems with the City's decision to terminate LeClair's employment. First, the arbitrator concluded that the City did not conduct a fair and impartial investigation. The arbitrator found several aspects of the City's investigation problematic. She concluded that City officials wanted R.J. to file a complaint and pressured her to do so, that City officials had tried to withhold security video of the incident at the bar from LeClair, and that the City violated the CBA by not providing him with a pretermination hearing in front of an impartial City decisionmaker.

The arbitrator also found that the City did not apply its rules, orders, and penalties evenhandedly and without discrimination. On this issue, the arbitrator rejected the City's argument that it had to discipline LeClair harshly because it would be detrimental to the City's reputation if the incident became public. The arbitrator appeared to reject this argument based on her conclusion that it was the City that publicized the incident. The arbitrator also noted that the City had imposed only minor discipline when other firefighters had committed public

- 925 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

misconduct. In particular, she noted that another firefighter had received only a 1-day suspension when he, while on duty and in uniform, "'liked'" a post on Facebook that "denigrated Black Lives Matter and characterized [Barack] Obama as a terrorist."

Finally, the arbitrator found that the degree of discipline was not commensurate either with the seriousness of LeClair's offense or with his record of past service. Here, the arbitrator found important that there had been no other complaints regarding LeClair in his career, that the only prior discipline he had received was a single reprimand for being late for work in 2011, and that he had been active in the community and had worked for the inclusion of minorities in the fire department.

The arbitrator concluded that the City did not have just cause to terminate LeClair's employment and ordered his reinstatement with backpay. The arbitrator did find that LeClair should be disciplined "for his violations of the contract and his act of insubordination," and accordingly, she stated that his award of backpay should not include pay for the five shifts he missed while on administrative leave.

*District Court.*

Shortly after the arbitrator issued her decision, the City filed an application to vacate the arbitration award in district court, asserting that the arbitrator had engaged in prejudicial misconduct, demonstrated partiality or bias, exceeded her powers in various respects, and acted with manifest disregard for the law. It also alleged that the arbitrator's decision violated public policy.

The union, named as the defendant in the action filed by the City, responded by filing a motion to confirm the arbitration award. In the motion, the union alleged that the City's arguments in support of vacating the arbitration decision were frivolous and requested that the district court award it attorney fees and costs under Neb. Rev. Stat. § 25-824 (Reissue 2016).

- 926 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

Following a hearing at which it received as evidence both the record of the arbitration and the arbitrator's decision, the district court issued an order denying the City's application to vacate. It found that the City had shown only disagreement with the arbitrator's factual findings and no evidence of misconduct or bias. The district court also found that the arbitrator had not exceeded her powers and that enforcement of the arbitrator's decision would not violate public policy. Finally, the district court questioned whether it had the authority to vacate the decision on the grounds that the arbitrator acted in manifest disregard of the law, but concluded that even if it had such authority, the arbitrator did not act in manifest disregard of the law. Because the City failed to demonstrate a basis for vacating the arbitration decision, the district court declined to vacate the decision and instead confirmed it.

In a later order, the district court granted the union's request for attorney fees and costs. It explained that the arbitrator's decision could be vacated only for certain, limited reasons and not for mere legal or factual error. The district court concluded that the City presented claims of legal and factual error "dressed up as" bases for which arbitration awards can be reviewed. Consequently, it found that the City's application to vacate the arbitration decision was frivolous and entered judgment in favor of the union for $16,020, the amount the union incurred in attorney fees and costs in resisting the City's application.

After an unsuccessful motion to alter or amend in the district court, the City filed a timely appeal, which we moved to our docket.

## ASSIGNMENTS OF ERROR

The City assigns, condensed, reordered, and restated, that the district court erred by (1) concluding that the arbitrator did not engage in prejudicial misconduct or demonstrate partiality or bias, (2) concluding that the arbitrator did not exceed her powers, (3) concluding that the arbitration decision should not be vacated on the grounds that the arbitrator

- 927 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

manifestly disregarded Nebraska law, (4) concluding that the arbitration decision should not be vacated on the grounds that it violates public policy, (5) holding the City to an incorrect burden of proof to vacate the arbitration decision, (6) "implicitly rul[ing]" that the arbitration decision was not subject to review, and (7) finding that the City's application to vacate the arbitration award was frivolous and awarding attorney fees and costs on that basis.

## STANDARD OF REVIEW

[1] In reviewing a decision to vacate, modify, or confirm an arbitration award, an appellate court is obligated to reach a conclusion independent of the trial court's ruling as to questions of law. However, the trial court's factual findings will not be set aside on appeal unless clearly erroneous. *Garlock v. 3DS Properties*, 303 Neb. 521, 930 N.W.2d 503 (2019).

## ANALYSIS

*Legal Framework Governing Judicial*
*Review of Arbitration Awards.*

The City's overarching argument in this appeal is that it was entitled to terminate LeClair's employment under the CBA and that the arbitrator's decision ordering his reinstatement should have been set aside by the district court. The City and the union agreed, however, that a dispute like this would be decided by an arbitrator. When parties agree to have an arbitrator resolve a dispute, the law provides little room for a court to undo the arbitrator's decision.

If courts reviewed the decisions of arbitrators as if they were decisions of lower courts, the parties' agreement to arbitrate would be upset and the purpose of arbitration would be frustrated. The parties' agreement would be upset because parties to an arbitration agreement have agreed to accept the arbitrator's view of the facts and the meaning of the contract rather than that of a court. See *State v. Henderson*, 277 Neb. 240, 762 N.W.2d 1 (2009), *disapproved on other grounds, Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768

- 928 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

(2020). As we have previously explained, "[w]hen . . . parties [agree] to arbitration, they [agree] to accept whatever reasonable uncertainties might arise from the process." *Jones v. Summit Ltd. Partnership Five*, 262 Neb. 793, 798, 635 N.W.2d 267, 271 (2001) (internal quotation marks omitted).

Not only would searching judicial review of arbitration decisions disturb a private agreement, it would make arbitration, a process that is designed to be swift and informal, much less so. See, e.g., *Hall Street Associates, L. L. C. v. Mattel, Inc.*, 552 U.S. 576, 588, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) (reasoning that "full-bore legal and evidentiary appeals" of arbitration decisions would "rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process") (internal quotation marks omitted); *Jones*, 262 Neb. at 798, 635 N.W.2d at 271 ("to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation") (internal quotations marks omitted).

[2] For these reasons, we have emphasized that strong deference is due an arbitrative tribunal. *Henderson, supra*. More specifically, courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. *Id.* A court may not overrule an arbitrator's decision simply because the court believes that its own interpretation of the contract, or the facts, would be the better one. *Id.*

[3] Although judicial review of arbitration decisions is limited, it is not nonexistent. Both the Federal Arbitration Act (FAA) and Nebraska's Uniform Arbitration Act (NUAA) authorize courts to vacate arbitration awards under certain, specified circumstances. See, 9 U.S.C. § 10 (2018); Neb. Rev. Stat. § 25-2613(a) (Reissue 2016). We have previously said that arbitration in Nebraska is governed by the FAA if it arises from a contract involving interstate commerce; otherwise, it is governed by the NUAA. See *Henderson, supra*.

- 929 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

A commentator has characterized that statement as a "gross oversimplification," John M. Gradwohl, *Arbitration: Interface of the Federal Arbitration Act and Nebraska State Law*, 43 Creighton L. Rev. 97, 115 (2009), but we need not revisit it here. In this case, both parties agree that the NUAA applies and the FAA does not, and so we proceed with that understanding as well.

The NUAA authorizes courts to vacate arbitration awards upon the application of a party under a number of circumstances. See § 25-2613(a). The City contends that two of the statutory bases for vacating an arbitration award under the NUAA apply in this case. It contends that the arbitrator acted with evident partiality and committed prejudicial misconduct under § 25-2613(a)(2) and exceeded her powers under § 25-2613(a)(3).

The City also argues that the district court should have vacated the arbitration award because the arbitrator acted in manifest disregard of the law and because the arbitration award was contrary to public policy. While the NUAA does not expressly refer to either concept, the City contends courts nonetheless have the authority to vacate arbitration awards for these reasons. We consider in the sections below the City's various arguments as to why the district court should have vacated the arbitration award, beginning with its claim that the arbitrator demonstrated evident partiality or committed prejudicial misconduct.

*City Did Not Show That Arbitrator Demonstrated
Evident Partiality or Committed
Prejudicial Misconduct.*

Although the City asserts that the arbitrator demonstrated evident partiality and committed prejudicial misconduct, it does not offer any explanation as to why the arbitrator would have been biased in favor of LeClair or against the City. Neither does it identify any act of purported misconduct by the arbitrator. Instead, the City points to certain factual findings

- 930 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

of the arbitrator and insists that bias or misconduct is the only possible explanation for those findings.

[4] We do not appear to have previously set forth what a party must show in order to demonstrate evident partiality or prejudicial misconduct on the part of an arbitrator under § 25-2613(a)(2). We have, however, explored what must be shown for a court to vacate an arbitration award under a similar section of the FAA. In *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 358, 495 N.W.2d 36, 43 (1993) (internal quotation marks omitted), we held that "evident partiality" exists under the FAA when "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." Quoting *Morelite Const. v. N.Y.C. Dist. Council Carpenters*, 748 F.2d 79 (2d Cir. 1984). For reasons we discussed in *Dowd, supra*, we believe that standard is appropriate under § 25-2613(a)(2) as well.

[5] The City has not demonstrated that a reasonable person would have to conclude that the arbitrator was partial to LeClair. The City is attempting to show that the arbitrator was partial to LeClair based on her rulings alone. In the context of motions to recuse a judge for bias or partiality, we have stated that judicial rulings alone almost never constitute a valid basis for a bias or partiality motion directed to a trial judge. See *In re Interest of Michael N.*, 302 Neb. 652, 925 N.W.2d 51 (2019). A corollary exists in the world of arbitration: Courts recognize that adverse rulings of an arbitrator alone will rarely evidence partiality. See, e.g., *Scandinavian Reinsurance v. Saint Paul*, 668 F.3d 60 (2d Cir. 2012).

[6] We agree that the circumstances under which an arbitrator's rulings alone could demonstrate the requisite partiality to vacate an award must be quite rare. As we will discuss in more detail below, serious legal or factual error by the arbitrator does not, standing on its own, provide a basis for vacating an award. See *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013). If even serious legal or factual errors do not justify vacatur of an

- 931 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

arbitration award, it stands to reason that errors would have to be particularly egregious for their only possible explanation to be arbitrator bias.

Even assuming there are cases in which an arbitrator could demonstrate partiality based on rulings alone, we do not believe this is such a case. The factual findings to which the City objects could be based on inferences the arbitrator drew or credibility determinations she made. They might even be ordinary mistakes. See *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350-51, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) (grounds for review under 9 U.S.C. § 10 of the FAA focus "on misconduct rather than mistake"). We do not find, however, that a reasonable person would have to conclude that the arbitrator was partial to LeClair or biased against the City. The district court thus did not err in declining to vacate the arbitration award under § 25-2613(a)(2).

*City Did Not Show That Arbitrator
Exceeded Her Powers.*

The City also argues that the district court should have vacated the arbitration award because the arbitrator exceeded her powers. We do not appear to have previously addressed what a party must show in order to demonstrate that an arbitrator exceeded his or her powers under § 25-2613(a)(3) of the NUAA. Again, however, there is an analogous, indeed, in this instance, identical, provision of the FAA. See 9 U.S.C. § 10(a)(4). And while we do not appear to have construed § 25-2613(a)(3)'s FAA counterpart, the U.S. Supreme Court has.

In *Oxford Health Plans LLC*, 569 U.S. at 569, the U.S. Supreme Court stated that a party attempting to vacate an arbitration award on the grounds that the arbitrator exceeded his or her powers "bears a heavy burden." It then went on to outline just how heavy that burden is. "It is not enough," the Court wrote, "to show that the [arbitrator] committed an error—or even a serious error." *Id.* (internal quotation marks omitted).

- 932 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

Instead, "[b]ecause the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Id.* (internal quotation marks omitted). It is only when the arbitrator issues an award that simply reflects the arbitrator's personal "notions of . . . justice" rather than "draw[ing] its essence from the contract" that a court may find that the arbitrator exceeded his or her powers. *Id.* (internal quotation marks omitted). Accordingly, the Court explained that the sole question presented when a party claims that an arbitrator exceeded his or her powers is whether the "arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*

In interpreting provisions of the NUAA, we have previously taken guidance from federal court decisions interpreting similar provisions of the FAA. See, e.g., *Jones v. Summit Ltd. Partnership Five*, 262 Neb. 793, 635 N.W.2d 267 (2001). The parties in this case do not argue that we should interpret § 25-2613(a)(3) differently than the U.S. Supreme Court has interpreted 9 U.S.C. § 10(a)(4). And given the limited judicial role in reviewing arbitration awards under Nebraska law, we find the narrow basis for finding that an arbitrator exceeded his or her powers under § 10(a)(4) of the FAA to be equally appropriate under § 25-2613(a)(3) of the NUAA. We will thus review the City's claim that the arbitrator exceeded her powers under the rubric outlined by the U.S. Supreme Court in *Oxford Health Plans LLC*.

The City argues that the arbitrator exceeded her powers in a number of ways. It first claims that the arbitrator's finding that the City lacked just cause cannot be squared with a section of the CBA that identified certain employee conduct as providing just cause for discipline. It also contends that the arbitrator exceeded her powers by using the seven questions from *Enterprise Wire to* analyze whether the City had just cause to discharge LeClair, by considering issues that were not before her, and by crafting her own discipline. We address

- 933 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

each of these arguments below, beginning with the City's argument that the arbitrator's decision cannot be reconciled with the CBA.

Article 6, Section 1, of the CBA includes a list of actions that "are declared to be good cause for disciplinary action against any employee." That list includes "[o]ffensive conduct or language toward the public or toward City Officers or employees," "[i]nsubordination," and "[c]ommission of acts or omissions unbecoming an incumbent of the particular office or position held, which render his reprimand, suspension, demotion, or discharge necessary or desirable for the economical or efficient conduct of business of the City or for the best interest of the City government." The same section of the CBA provides that "[v]iolation of the provisions of this Section shall be punishable by reprimand, suspension, demotion, and/or discharge." Separate sections of article 6 address the various forms of employee discipline available under the CBA: reprimand, suspension, demotion, and discharge. Those sections provide that each form of discipline may be imposed "for cause." The CBA also provides that the City may "suspend, demote, discharge, or take other disciplinary action against employees for just cause."

The City argues that these provisions of the CBA authorize it to impose upon an employee who engages in any of the actions listed in article 6, section 1, any form of discipline it chooses, up to and including discharge. And, the City adds, there is no dispute that LeClair engaged in such actions. In this regard, the City points out that LeClair admitted at the arbitration hearing that he violated Olsen's direct order not to contact Remus and that he engaged in conduct "unbecoming an incumbent" of his position. The City also notes that the arbitrator found that LeClair violated a direct order by contacting Remus and engaged in conduct that was offensive to a citizen of Omaha. According to the City, once the arbitrator found that LeClair committed actions listed in article 6, section 1, the

- 934 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

only possible conclusion that could follow was that the City had just cause to discharge LeClair.

The City may have identified a reasonable interpretation of the CBA. It is also possible that if the interpretation of the CBA the City advances was presented to a court, the City would have prevailed. Even so, it would not inevitably follow that the arbitrator exceeded her powers. As we have discussed above, an arbitrator does not exceed his or her powers merely by interpreting a contract differently than a court would. When it is claimed that an arbitrator acted in excess of his or her powers, the inquiry is not whether the arbitrator's interpretation was correct, but whether the arbitrator was arguably interpreting the contract at all. See *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013).

We find relevant to this question the fact that the arbitrator stated in her written decision that LeClair committed "offenses listed as ones for which a firefighter can be disciplined," but went on to find that the City lacked just cause to discharge LeClair. The arbitrator did not ignore the CBA's list of actions for which the City could impose discipline. Instead, she appears to have interpreted the CBA to provide the City with just cause to impose some form of discipline on an employee who engages in such actions, but for the severity of the discipline that the City may impose to depend on the circumstances.

Under such a reading, the City might have just cause to impose some lesser form of discipline for a particular action of an employee falling within article 6, section 1, but not have just cause to discharge the employee for that action. We cannot say that such an understanding could only result from the arbitrator's dispensing her own personal notions of justice, rather than "draw[ing] its essence from the contract." *Oxford Health Plans LLC*, 569 U.S. at 569 (internal quotation marks omitted). Because the arbitrator arguably interpreted the CBA to make the question of whether there was just cause to discharge

- 935 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

LeClair dependent on more than whether he committed acts identified in article 6, section 1, we find that the arbitrator did not exceed her powers by not ending the inquiry as to whether there was just cause for discharge after finding LeClair committed such acts.

The City next contends that the arbitrator acted in excess of her powers by analyzing just cause through the seven questions identified in the *Enterprise Wire* arbitration decision. Here, the City contends that even if the CBA allowed the arbitrator to separately analyze just cause after finding that LeClair committed acts identified in article 6, section 1, the CBA did not authorize the arbitrator to use the *Enterprise Wire* questions to complete that analysis.

We find that the arbitrator did not exceed her powers by analyzing whether the City had just cause to discharge LeClair through the seven questions of the *Enterprise Wire* test. The CBA did not expressly define "just cause," and so the arbitrator had to look outside the CBA to assign some meaning to the phrase. Our task is limited to deciding whether the arbitrator was arguably adhering to contract interpretation when she analyzed just cause through the *Enterprise Wire* questions. We believe she was.

It is difficult to assign a meaning to a term like "just cause" without engaging in tautology. See *Children Servs. v. Communication Workers*, 113 Ohio St. 3d 291, 296, 865 N.E.2d 31, 35 (2007) (observing that definition of "good cause" can be "nebulous and elusive"). The *Enterprise Wire* questions provide some concrete considerations for a fact finder to evaluate when an action must be supported by just cause. Further, the specific questions that are part of the *Enterprise Wire* test do not strike us as so disconnected to the concept of just cause, that we could say the arbitrator strayed from contract interpretation in using them. We are not the first court to conclude that an arbitrator does not act in excess of his or her powers by analyzing just or good cause through the *Enterprise Wire* questions. See, e.g., *Conoco, Inc. v. Oil, Chem.*

- 936 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

& *Atomic Workers*, 26 F. Supp. 2d 1310 (N.D. Okla. 1998); *Children Servs.*, *supra*. See, also, Mario F. Bognanno et al., *The Conventional Wisdom of Discharge Arbitration Outcomes and Remedies: Fact or Fiction*, 16 Cardozo J. Conflict Resol. 153, 157 (2014) ("it is reported that no definition of just cause is more widely recognized and accepted than that first articulated nearly fifty years ago in [*Enterprise Wire*]").

The City asserts that rather than using the *Enterprise Wire* questions to assess whether there was just cause to discharge LeClair, the arbitrator should have analyzed good cause by using a test articulated in *Stejskal v. Department of Admin. Servs.*, 266 Neb. 346, 665 N.W.2d 576 (2003). In that case, a state agency appealed a district court's determination that the agency lacked just cause to discharge an employee in an action brought under the Administrative Procedure Act. At issue was whether the district court erred by finding that the employer lacked just cause. We stated that we had not defined "just cause" in this context but had stated that "'good cause' for dismissal is that which a reasonable employer, acting in good faith, would regard as good and sufficient reason for terminating the services of an employee, as distinguished from an arbitrary whim or caprice." *Stejskal*, 266 Neb. at 351, 665 N.W.2d at 581. We then used that definition to assess the district court's determination that just cause was lacking in that case.

The City suggests that the definition of "good cause" applied in *Stejskal* differs greatly from the *Enterprise Wire* questions used by the arbitrator. The City insists that whether the discipline arose after a fair and objective investigation, whether the discipline was consistent with that imposed on other employees, and whether the discipline accounted for the employee's record of service are not mentioned in the *Stejskal* definition. Although undoubtedly different verbal formulations, it is not clear to us that there is a substantive difference between the *Enterprise Wire* questions and the *Stejskal* definition. Each of the questions the City claims are absent from the *Stejskal* definition would seem to be relevant to whether an employer's

- 937 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

decision to discharge an employee was done reasonably, in good faith, and not arbitrarily or with caprice, concepts that are expressly encompassed in the *Stejskal* definition.

In any event, the City has not shown the arbitrator exceeded her powers by not using the *Stejskal* definition to evaluate whether the City had just cause to discharge LeClair. The contention that Nebraska law required application of the *Stejskal* definition is, at most, a claim that the arbitrator committed legal error. A party does not show that an arbitrator exceeded his or her powers even by showing that the arbitrator committed a serious legal error. See *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013).

Given our conclusion that the arbitrator did not exceed her powers by utilizing the *Enterprise Wire* questions, the City's argument that the arbitrator exceeded her powers by considering issues not properly before her must fail. The City claims that by considering the fairness of its investigation, the consistency of its discipline decisions, and the quality of LeClair's past record of service, the arbitrator weighed in on matters that were not submitted to her for decision. The arbitrator did not, however, consider these issues as independent subjects. Rather, she considered them as relevant to whether the City had just cause to discharge LeClair, an issue that was clearly submitted to her for decision.

Equally quick work can be made of the City's claim that the arbitrator exceeded her powers by "substitut[ing] her own discipline." Brief for appellant at 31. This objection is aimed at the arbitrator's order that LeClair should lose five shifts of backpay for his actions. The City claims the arbitrator did not have the power to craft her own discipline for LeClair's actions. The City, however, has not directed us to authority that supports its argument. The City cites cases in which courts have held that an arbitrator may not find that an employer has just cause to discharge an employee and then substitute his or her own discipline. See, e.g., *187 Concourse Associates v. Fishman*, 399 F.3d 524 (2d Cir. 2005). Such cases have no

- 938 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

application here; the arbitrator found the City lacked just cause to discharge LeClair.

Because the City has not shown that the arbitrator exceeded her powers, the district court did not err in refusing to vacate the arbitration award on this basis.

*"Manifest Disregard of the Law" Is*
*Not Basis to Vacate Arbitration*
*Award Governed by NUAA.*

The City next contends that the district court should have vacated the arbitration award because the arbitrator manifestly disregarded Nebraska law. The City argues that the arbitrator manifestly disregarded Nebraska law by determining whether the City had just cause to discharge LeClair without applying the definition of good cause applied in *Stejskal v. Department of Admin. Servs.*, 266 Neb. 346, 665 N.W.2d 576 (2003).

Before we consider whether the arbitrator manifestly disregarded the law, however, we must first determine whether courts even have authority to vacate arbitration awards governed by the NUAA on this basis. Although the City can point to provisions of the NUAA that direct courts to vacate arbitration awards when "[t]here was evident partiality by an arbitrator," see § 25-2613(a)(2), or when "arbitrators exceeded their powers," see § 25-2613(a)(3), there is no provision in the NUAA that authorizes courts to vacate an arbitration award on the grounds that the arbitrator manifestly disregarded the law. The City claims that such power nonetheless exists, pointing to federal cases holding that arbitration awards governed by the FAA can be vacated if a court finds that the arbitrator acted in manifest disregard of the law. See, e.g., *Jones v. Dancel*, 792 F.3d 395 (4th Cir. 2015).

Whether arbitration awards governed by the FAA can be vacated on the grounds that the arbitrator manifestly disregarded the law is a question on which courts have diverged. Like the NUAA, the FAA contains no express provision authorizing courts to vacate an arbitration award because the arbitrator manifestly disregarded the law. Although the City does

- 939 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

identify some cases holding that the absence of statutory language does not preclude courts from vacating arbitration awards on the basis of manifest disregard of the law, see *Jones, supra*, several other courts have held that arbitration awards may be vacated only for the reasons enumerated in the FAA and that therefore, an arbitration award may not be vacated on the grounds that the arbitrator manifestly disregarded the law. See, e.g., *Medicine Shoppe Intern. v. Turner Investments*, 614 F.3d 485 (8th Cir. 2010); *Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349 (5th Cir. 2009). We recently sided with this latter group of courts, finding that the statutory grounds in the FAA for vacating arbitration awards are exclusive. See *Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020).

We do not appear to have ever recognized manifest disregard of the law as a basis to vacate an arbitration award governed by the NUAA. And although other courts have held that arbitration awards governed by similar statutes may be vacated for this reason, as we will explain, we are not persuaded that we should follow their lead when it comes to arbitration awards governed by the NUAA.

Some courts have concluded that even if the words "manifest disregard of the law" are not expressly mentioned by statute, "they have come to serve as a judicial gloss" on the language authorizing courts to vacate arbitration awards if arbitrators exceeded their powers. *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 414 (9th Cir. 2011). In other words, these courts appear to have concluded that arbitration awards may be vacated based on the arbitrator's manifest disregard of the law because an arbitrator necessarily acts in excess of his or her powers if he or she manifestly disregards the law. We disagree with this proposition.

In deciding whether an arbitrator exceeded his or her power, the focus is, appropriately, on whether the arbitrator acted within the bounds of contractual authority. It is the parties' agreement, after all, from which the arbitrator's power derives.

- 940 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

See *Cornhusker Internat. Trucks v. Thomas Built Buses*, 263 Neb. 10, 11, 637 N.W.2d 876, 878 (2002) ("[a]rbitration is purely a matter of contract"). In contrast, as a Colorado appellate court has helpfully observed, the manifest disregard of the law standard looks not to whether the arbitrator stayed within the confines of contractual authority, but whether he or she deliberately ignored governing law in deciding the dispute. See *Coors Brewing Co. v. Cabo*, 114 P.3d 60 (Colo. App. 2004). Consequently, "[a]n arbitrator does not necessarily exceed his power when he does not properly apply the law." *Id.* at 64.

Other courts have concluded that the authority to vacate arbitration awards on the basis that the arbitrator manifestly disregarded the law arises not from statute, but from common law. Maryland's highest court, for example, held that its courts had such authority in *WSC/2005 LLC v. Trio Ventures*, 460 Md. 244, 190 A.3d 255 (2018). It reasoned that Maryland's enactment of its version of the Uniform Arbitration Act did not preempt earlier cases in which Maryland courts recognized a common-law authority to vacate arbitration awards if the arbitrator manifestly disregarded the law. Any attempt to find a similar common-law authority under Nebraska law, however, faces an immediate barrier. In *Hartman v. City of Grand Island*, 265 Neb. 433, 657 N.W.2d 641 (2003), we rejected an argument that courts could, after the enactment of the NUAA, continue to vacate arbitration awards on common-law grounds not set forth in the NUAA. As we stated there, "[t]he role of the court [after enactment of the NUAA] is specifically addressed and limited by the [NUAA]." *Hartman*, 265 Neb. at 437, 657 N.W.2d at 645.

We acknowledge that in *State v. Henderson*, 277 Neb. 240, 762 N.W.2d 1 (2009), *disapproved on other grounds, Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020), we held that an arbitration award governed by the NUAA could be vacated on the grounds that it violated public policy, a ground also not mentioned in the NUAA. We do not, however, understand *Henderson* to have silently overturned our

- 941 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

conclusion in *Hartman* that the NUAA eliminated previously existing common-law bases to vacate arbitration awards. Our recognition of authority to vacate arbitration awards in violation of public policy in *Henderson* was based on "the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." 277 Neb. at 247, 762 N.W.2d at 6-7 (internal quotation marks omitted).

[7] We can discern no basis for courts to vacate arbitration awards governed by the NUAA on the grounds that the arbitrator manifestly disregarded the law. The Legislature authorized the vacatur of arbitration awards on several grounds, but did not identify an arbitrator's manifest disregard of the law. To the contrary, the NUAA specifically provides that "[t]he fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." § 25-2613(a). Given this direction from the Legislature and our generally limited review of arbitration awards, it strikes us as particularly inappropriate for this court to unilaterally prescribe a new basis on which arbitration awards can be vacated.

Because we hold that courts lack the authority to vacate arbitration awards governed by the NUAA on the grounds that the arbitrator manifestly disregarded the law, we find that the district court did not err by not vacating the arbitration award on that basis.

*City Did Not Show That Enforcement
of Arbitration Award Would
Violate Public Policy.*

The City's final argument for why the district court should have vacated the arbitration award is that the award ordering LeClair's reinstatement violates public policy. As alluded to above, in *Henderson*, this court held that courts may refuse to enforce arbitration awards governed by the NUAA if the award is "contrary to a public policy that is explicit, well defined, and dominant." 277 Neb. at 250, 762 N.W.2d at 9.

- 942 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

Although we recognized violation of public policy as a basis for a court to refuse to enforce an arbitration award in *Henderson*, we also articulated a number of ways in which this doctrine was limited. First, we made clear that because parties to arbitration have agreed to have an arbitrator decide their dispute, a court may not, even when considering whether an arbitration award violated public policy, "revisit the arbitrator's factual findings." *Id.* at 244, 762 N.W.2d at 5. Second, we cited U.S. Supreme Court precedent characterizing the public policy exception as "narrow" and emphasizing that, when a party asks a court to vacate an arbitration award ordering an employee's reinstatement on public policy grounds, the issue is not whether the employee's conduct violated public policy, but whether the order to reinstate does so. *State v. Henderson*, 277 Neb. 240, 249, 762 N.W.2d 1, 8 (2009), *disapproved on other grounds, Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020), citing *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000). Finally, we also made clear that in order for an arbitration award to be vacated on public policy grounds, the public policy at issue must be "ascertained by reference to laws and legal precedents, not from general considerations of supposed public interests." *Henderson*, 277 Neb. at 250, 762 N.W.2d at 9.

Despite the narrow nature of the power to vacate arbitration awards on the grounds that they violate public policy, we determined that the arbitration award at issue in *Henderson* should be vacated on those grounds. In that case, the Nebraska State Patrol terminated the employment of a state trooper who had joined a Ku Klux Klan-affiliated organization, but an arbitrator ordered that he be reinstated. After exploring the history and ideology of the Ku Klux Klan, we found that the arbitrator's award violated Nebraska's public policy that "laws should be enforced without racial or religious discrimination, and the public should reasonably perceive this to be so." *Id.* at 265, 762 N.W.2d at 18. We cautioned that this public policy "is only implicated by behavior of the gravest nature,"

- 943 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

but concluded the trooper's associating with the Ku Klux Klan, "arguably the most reviled, feared, violent, and racist organization in this country's history," qualified. *Id.* at 263, 264, 762 N.W.2d at 17 (internal quotation marks omitted). We reasoned that Henderson had "endorsed a point of view that is completely antithetical to the principles of Nebraska law that he was bound by oath to enforce." *Id.* at 265, 762 N.W.2d at 18.

The City contends that LeClair's reinstatement violated a well-defined and dominant Nebraska public policy prohibiting discrimination or intimidation on the basis of race and gender. It also contends that his reinstatement violates public policy because it undermines the public's perception that the City is committed to providing services without discrimination.

We do not question the City's contention that Nebraska has a well-defined and dominant public policy prohibiting discrimination or intimidation on the basis of race or gender. See, e.g., Neb. Rev. Stat. § 28-111 (Reissue 2016) (imposing enhanced penalties if person commits certain criminal offenses because of victim's race or gender). The more difficult task for the City is showing that LeClair's reinstatement is so contrary to that public policy that the arbitrator's award should not be enforced.

On this issue, the City asserts that LeClair engaged in discrimination and intimidation on the basis of race and gender in his interaction with R.J. at the bar and that thus, his reinstatement would violate Nebraska's public policy against such behavior. Setting aside the fact that this argument appears to conflate the issue of whether LeClair's actions violated public policy with the relevant question of whether his reinstatement would violate public policy, we cannot make our own factual findings that LeClair engaged in racial or gender discrimination or intimidation. Any such action would have to have been found by the arbitrator. See *Henderson, supra*. And, at least on the surface of her award, the arbitrator did not find that

- 944 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

LeClair engaged in discrimination or intimidation on the basis of race or gender.

The City contends that despite any express finding of racial or gender discrimination or intimidation by LeClair, it can be clearly inferred that the arbitrator made such a finding. It points out that the arbitrator stated that LeClair made "inappropriate comments" to R.J. and "shoved her after the statement was made." The City suggests that given the content of LeClair's alleged statements and the fact that R.J. is an African-American woman, the arbitrator had to have found that LeClair discriminated against R.J. and intimidated her on the basis of race and gender.

We disagree with the City that the arbitrator necessarily found that LeClair engaged in discrimination or intimidation on the basis of race or gender by finding that he used inappropriate language and shoved R.J. LeClair admitted to using inappropriate language and making contact with R.J. while also disavowing that he was motivated by animus or otherwise acting on the basis of R.J.'s race or gender. We reference this testimony not to assess its credibility, but because the arbitrator might have credited it. Her general findings of misconduct on the part of LeClair do not necessarily demonstrate that she found LeClair engaged in discrimination or intimidation on the basis of race or gender.

Without a finding by the arbitrator that LeClair engaged in discrimination or intimidation on the basis of race or gender, the City is left with its argument that the arbitrator's award should not be enforced because of the effect his reinstatement would have on the public's perception of the City. This argument relies heavily on *Henderson*, where we held that public policy precluded reinstating the state trooper who joined a Ku Klux Klan-affiliated organization, in part, because his reinstatement "would severely undermine reasonable public perception" that "each citizen of Nebraska can depend on law enforcement officers to enforce the law without regard to race." 277 Neb. at 263, 762 N.W.2d at 17. The City contends

- 945 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

that, in the same way, LeClair's reinstatement would undermine the public's perception that citizens of Omaha can depend upon the City to "provide services without the possibility of discrimination." Brief for appellant at 30.

The City's public perception argument attempts to subtly but considerably expand our holding in *Henderson*. While the City claims that the reinstatement of LeClair as a firefighter would undermine the public's perception that the City provides services without discrimination, the public policy we recognized in *Henderson* was that the public should reasonably perceive that *laws are enforced* without discrimination. See, e.g., *Henderson*, 277 Neb. at 265, 762 N.W.2d at 18 (referring to "explicit, well-defined, and dominant public policy that laws should be enforced without racial or religious discrimination, and the public should reasonably perceive this to be so"). We found in *Henderson* that such a public policy existed by referring to Nebraska's statute prohibiting law enforcement from engaging in racial profiling, see Neb. Rev. Stat. § 20-501 et seq. (Reissue 2007); the legislative history of that statute, in which supporters of the statute asserted a need to counteract any perception that law enforcement was engaging in racial profiling; and language from an opinion of Massachusetts' highest court discussing the importance of the public perceiving that police officers do not abuse their power. Because the public policy we recognized in *Henderson* concerned the public's perception of law enforcement, it is of little use to the City in contending that the reinstatement of LeClair, a firefighter, violates public policy.

Obviously, the fact that we did not recognize an explicit, well-defined, and dominant public policy in *Henderson* that the public should perceive that all governmental services are provided without discrimination would not preclude the City from establishing that such a public policy exists in this case. As we have explained, however, a court may only refuse to enforce an arbitration award on the grounds that it is contrary to public policy if that public policy is ascertained by reference

- 946 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

to laws and legal precedents, not from general considerations of supposed public interests. See *State v. Henderson*, 277 Neb. 240, 762 N.W.2d 1 (2009), *disapproved on other grounds, Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020). And while we do not question that it is generally in the public interest for the public to perceive that all governmental services, including those provided by firefighters, are provided without discrimination, the City has not directed us to any laws or legal precedents it believes establish an explicit, well-defined, and dominant public policy to that effect. As the party seeking to vacate the arbitration award, the City has the burden to establish the existence of any public policy that it contends is inconsistent with enforcement of the arbitration award. See, e.g., 2 Martin Domke et al., Domke on Commercial Arbitration § 38:12 (3d ed. 2021) (party challenging arbitration award bears burden of proving grounds to vacate it). Because the City has not shown that this arbitration award fits within the "narrow" category of cases in which enforcement would violate public policy, see *Henderson*, 277 Neb. at 249, 762 N.W.2d at 8, the assignment of error lacks merit.

*Burden of Proof and Scope of Review in District Court.*

In addition to its arguments that the district court erred by not vacating the arbitration award, the City claims that the district court erred in other, narrower ways. We turn to those arguments now, beginning with the City's claim that the district court applied an incorrect burden of proof.

In the conclusion of its order finding that the arbitrator's award should not be vacated, the district court stated that there had been "no clear showing, by the City, that one of the statutorily or judicially recognized bases for vacatur has been met." The City contends that this language shows that the district court erroneously applied a heightened burden of proof; the City claims it was entitled to vacatur if it demonstrated a ground for vacatur by the greater weight of the evidence.

- 947 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

It is not clear to us that the district court, in fact, imposed a heightened burden of proof. But even assuming the district court concluded that it could only vacate the arbitration award if the City made a clear showing that a ground to vacate the arbitration award was present, it does not follow that the district court committed reversible error. The question of whether one of the bases to vacate the arbitration award was present is a question of law, which we review independently of the district court. See *Garlock v. 3DS Properties*, 303 Neb. 521, 930 N.W.2d 503 (2019). We have performed that independent review as detailed above and determined that the City's arguments for vacating the arbitration award lacked merit.

[8] The City also assigns that the district court erred by ruling that the arbitration award was not subject to appeal. The basis for this assignment of error is not clear. Although the district court made reference to language in the CBA providing that the arbitrator's decision was to be binding and not subject to appeal, the district court did not treat the arbitrator's decision as immune from any court challenge. Instead, it individually considered each of the City's arguments for vacating the arbitration award. In any case, the City presents no argument in support of this assignment of error, so we need not address it further. We do not address errors that are assigned but not argued. See *Myers v. Nebraska Equal Opp. Comm.*, 255 Neb. 156, 582 N.W.2d 362 (1998).

*Attorney Fees and Costs.*

[9,10] Finally, the City argues that the district court erred by awarding the union attorney fees and court costs on the grounds that the City's attempt to vacate the arbitration award was frivolous under § 25-824(2). A frivolous action is one in which a litigant asserts a legal position wholly without merit; that is, the position is without rational argument based on law and evidence to support the litigant's position. *Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020). We have said that the term "frivolous" connotes an improper motive

- 948 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

or legal position so wholly without merit as to be ridiculous. *Id.* Any doubt about whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question. *Id.*

On this issue, we, for the first time in this case, part company with the district court. Although we have found that the City's arguments that the arbitration award should have been vacated lacked merit, we disagree with the district court that the City's position was so lacking in merit to be deemed frivolous.

We disagree with the district court that the City made frivolous claims of factual and legal error that were merely "dressed up" as arguments that would allow the arbitration award to be vacated. Prior to this case, we had not explored what a party must show to demonstrate that an arbitrator exceeded his or her powers under the NUAA or whether an arbitration award governed by the NUAA could be vacated on the grounds that the arbitrator manifestly disregarded the law. Further, *Henderson* recognized that, at least in some circumstances, an arbitration award can be vacated because it violates public policy. Resolving all doubts about the City's legal positions in its favor, as our standard requires, we find that the arguments made by the City that the arbitration award should be vacated, while not meritorious, were also not so unreasonable to be deemed frivolous.

Because we find that the City's attempt to vacate the arbitration award was not frivolous, the district court erred in awarding attorney fees and costs pursuant to § 25-824. We reverse that portion of the district court's decision.

## CONCLUSION

In its briefs and at oral argument in this case, the City contended that it should be able to fire LeClair for his actions and asked that the arbitrator's decision finding otherwise be vacated. The City, however, agreed to submit disputes like this to arbitration. As a result, our role in this case is a limited

- 949 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
CITY OF OMAHA v. PROFESSIONAL FIREFIGHTERS ASSN.
Cite as 309 Neb. 918

one. While we do not minimize or condone the acts LeClair admitted to, much less those he was accused of, all that we are empowered to do is determine whether one of the narrow grounds on which courts may vacate arbitration awards applies. We find that while the City's arguments that such grounds were present were not frivolous, neither were they meritorious. We therefore reverse the district court's order to the extent it awarded the union attorney fees and costs and affirm the order in all other respects.

AFFIRMED IN PART, AND IN PART REVERSED.

MILLER-LERMAN, J., not participating.